LAW OFFICE OF VICKI I. SARMIENTO
Vicki I. Sarmiento, Esq. (SBN 134047)
333 N. Garfield Ave.
Alhambra, CA 91801
Tel: (626) 308-1171
Fax: (626) 308-1101

LAW OFFICES OF DALE K. GALIPO
Dale K. Galipo (SBN 144074)
E-mail:  dalekgalipo@yahoo.com
21800 Burbank Blvd., Suite 310
Woodland Hills, CA  91367
Tel: (818) 347-3333
Fax: (818) 347-4118

*Attorneys for PLAINTIFF:*
*ARMAAN KARIM PREMJEE*

# UNITED STATES DISTRICT COURT FOR THE

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARMAAN KARIM PREMJEE,<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF LOS ANGELES; CHIEF CHARLIE BECK, DETECTIVE OSCAR GAMINO, DETECTIVE CARLA ZUNIGA, and DOES 1-10, inclusive.<br><br>Defendants. | **Case No.**<br><br>**COMPLAINT FOR DAMAGES**<br><br>1. Deprivation of Civil Rights – Arrest without Probable Cause (42 U.S.C. § 1983)<br>2. Deprivation of Civil Rights – Concealment of Evidence Violations (42 U.S.C. § 1983)<br>3. Deprivation of Civil Rights – *Brady* Violations (42 U.S.C. § 1983)<br>4. Deprivation of Civil Rights – *Monell* Violations (42 U.S.C. § 1983)<br>5. Malicious Prosecution (California Common Law and 42 U.S.C. § 1983)<br>6. Negligence/Negligent Training & Supervision<br>7. Bane Act Violation – Civil Code 51, 52.1<br>8. False Arrest/False Imprisonment |

9. Intentional Infliction of Emotional Distress

**DEMAND FOR JURY TRIAL**

## COMPLAINT FOR DAMAGES

Plaintiff, ARMAAN KARIM PREMJEE, for his Complaint against Defendants, CITY OF LOS ANGELES, DETECTIVE OSCAR GAMINO, DETECTIVE CARLA ZUNIGA, and DOES 1-10, inclusive, alleges as follows:

## JURISDICTION AND VENUE

1.     This Court has original jurisdiction pursuant to 28 U.S.C. §§1331 and 1343(a)(3)-(4) because Plaintiff asserts claims arising under the laws of the United States including 42 U.S.C. §1983 and the Fourth and Fourteenth Amendments of the United States Constitution. This Court has supplemental jurisdiction over Plaintiff's claims arising under state law pursuant to 28 U.S.C. §1367(a), because those claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

2.     Venue is proper in this Court because the parties reside in, and all incidents, events, and occurrences giving rise to this action occurred in the County of Los Angeles, California.

## INTRODUCTION

3.     This civil rights and state tort action seeks compensatory and punitive damages from Defendants for violating various rights under the United States Constitution and state law in connection with the wrongful arrest of ARMAAN KARIM PREMJEE.

## PARTIES

4.     ARMAAN KARIM PREMJEE ("Plaintiff" or "Mr. Premjee") is a resident of the County of Los Angeles, California. He brings this action to obtain compensation for the injuries he suffered because of his false arrest and malicious prosecution.

5.     At all relevant times, Defendant CITY OF LOS ANGELES ("CITY") is and was a duly organized public entity, form unknown, existing under the laws of the State of California. CITY is a chartered subdivision of the State of California with the capacity to be sued. CITY is responsible for the acts, omissions, policies, procedures, practices, and customs of its various agents and agencies, including the LOS ANGELES POLICE DEPARTMENT ("LAPD") and its agents and employees. At all relevant times, CITY was responsible for assuring that the actions, omissions, policies, procedures, practices, and customs of LAPD and its employees and agents complied with the laws of the United States and the State of California.

6.     At all relevant times, CITY was the employer of LAPD Detective OSCAR GAMINO ("GAMINO") and DOES 1-4.  At all times relevant herein, GAMINO was employed by and working on behalf of the CITY and the LAPD, and resided within the state of California. On information and belief, at all relevant times herein, GAMINO was acting under the color of law within the course and scope of his duties as a police detective for the CITY and LAPD.  GAMINO was acting with the complete authority and ratification of his principal, Defendant CITY.

7.     At all relevant times, CITY was the employer of LAPD Detective CARLA ZUNIGA ("ZUNIGA") and DOES 1-4.  At all times relevant herein, ZUNIGA was employed by and working on behalf of the CITY and the LAPD, and resided within the state of California. On information and belief, at all relevant times herein, ZUNIGA was acting under the color of law within the course and scope of his duties as a police

Complaint for Damages and Demand for Jury Trial

detective for the CITY and LAPD.  ZUNIGA was acting with the complete authority and ratification of her principal, Defendant CITY.

8.     Defendants DOES 1-4 were at all relevant times herein employees and officers for the CITY and LAPD. At the time of the incident, DOES 1-4 were acting under color of law within the course and scope of their duties as officers for the CITY and LAPD. DOES 1-4 were acting with the complete authority and ratification of their principal, Defendant CITY.

9.     Defendant CHARLIE BECK ("BECK") was at all relevant times herein the Chief of the LAPD, and he, along with DOES 5-8 were managerial, supervisorial, and/or policymaking employees of the LAPD. At the time of the incident, DOES 5-8 were acting under color of law within the course and scope of their duties for the LAPD. DOES 5-8 were acting with the complete authority and ratification of their principal, Defendant CITY.

10.    Defendants GAMINO, ZUNIGA, and DOES 1-10 are sued in their individual capacities.

11.    On information and belief, GAMINO, ZUNIGA, and DOES 1-10 were residents of the County of Los Angeles, California.

12.    The true names and capacities of DOES 1-10 are unknown to Plaintiff, who otherwise sues these Defendants by such fictitious names. Plaintiff will seek leave to amend this complaint to show the true names and capacities of these Defendants when they have been ascertained. Each of the fictitiously named Defendants is responsible in some manner for the conduct or liabilities alleged herein.

13.    This is an action for damages and such other and further relief as may be consistent with state and federal law, to redress violations of the Plaintiff's rights protected by the United States Constitution, by persons acting under color of state law.

14.     At all times mentioned herein, each and every Defendant was the agent of each and every other Defendant and had the legal duty to oversee and supervise the hiring, conduct, and employment of each and every Defendant.

15.     All of the acts complained of herein by Plaintiff against Defendants were done and performed by said Defendants by and through their authorized agents, servants, and/or employees, all of whom at all relevant times herein were acting within the course, purpose, and scope of said agency, service, and/or employment capacity. Moreover, Defendants and their agents ratified all of the acts complained of herein.

16.     On or about November 13, 2017, Plaintiff timely served a comprehensive claim for damages with the City of Los Angeles pursuant to applicable sections of the California Government Code including §910.4.  On December 5, 2017, the City of Los Angeles rejected these claims.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

17.     Plaintiff repeats and re-alleges each and every allegation in paragraphs 1 through 16 of this Complaint with the same force and effect as if fully set forth herein.

### Background

18.     This case arises from the detention, arrest, and malicious prosecution of Plaintiff, Mr. Premjee, who was falsely arrested and wrongfully charged with the crime of rape of an unconscious girl ("Arshia") in her dorm room at University of Southern California ("USC") Campus in Los Angeles, CA.  Mr. Premjee was innocent.  After three days of testimony, July 24, 25, and 26, 2017, at his preliminary hearing, Judge Michael E. Pastor dismissed the charges.   The dismissal was based on overwhelming evidence in support of consent to sex by Arshia established through the efforts of Plaintiff's criminal defense attorney—which evidence Plaintiff contends was concealed and/or suppressed by GAMINO, ZUNIGA and DOES 1-4.  The fraudulent concealment of critical evidence establishing consent was not discovered by Plaintiff's criminal

defense attorney until May 23, 2017.  In dismissing the case, Judge Michael Pastor cited to the prosecutor's failure to establish "reasonable suspicion" that Mr. Premjee committed the crime of sexual intercourse with a person who is "unconscious of the nature of the act."  There was video and eyewitness evidence, from the time Mr. Premjee met the alleged victim at a bar to the time they had sex, that she consented to have sex with him and never revoked her consent.  Video at the bar showed her kissing Mr. Premjee and leading him around by the hand while he was on his cell phone.  Video outside the bar clearly shows the alleged victim motioning to her friend twice using universal sign for sexual intercourse (i.e., one hand forming a circle and her index finger from the other hand inserted in and out) while she was standing behind Mr. Premjee.   Video at her dormitory showed the alleged victim registering Mr. Premjee as a guest and leading him to the elevator which would take them to her dorm room.  The police reports authored by GAMINO, ZUNIGA and DOES 1-4 omitted the video evidence, as well as witness accounts, that established consent to sex by Arshia with the Plaintiff.   Instead, GAMINO, ZUNIGA and DOES 1-4 publicized Mr. Premjee's arrest for rape and further damaged his reputation.  Reports of the alleged rape surfaced on news outlets, internet blogs, and other media.  He was expelled from his fraternity and from USC, spent thousands of dollars legal fees to fight the criminal charges and to fight his expulsion from USC.   Mr.  Premjee  will forever be labeled a "rapist," his reputation is destroyed, his professional life and ability to secure employment in the future are impacted.

## Evidence Establishing Consent to Sex and Negating Any Crime

19.    On Friday, March 31, 2017, Mr. Premjee was a business major and sophomore at USC.  He lived at the Kappa Sigma fraternity house.  After spending the day with friends, attending a fund-raising event, and going about his daily life, he and a friend decided to go to a bar called Banditos near campus.  Around midnight, he met

Arshia who within minutes of meeting her she put her arms around Mr. Premjee's neck and started kissing his neck. They "made out" for about 10 or 20 minutes, at which time they both agreed to leave to go to his place and have consensual sex. Video footage shows Arshia kissing Mr. Premjee at the bar counter. Video footage also shows Arshia leading Mr. Premjee out of the bar pulling him by the hand.

20.     Outside of the bar, Arshia told her friend (Kaavya) that she was leaving with Mr. Premjee. Arshia asked Mr. Premjee to take a photo of her and her friend with Arshia's cell phone. He did and put the photo on Snapchat which has a time stamp of 12:39 a.m. While they were waiting for the Uber outside of the bar, Mr. Premjee was talking to Kaavya face to face. Arshia was standing behind Mr. Premjee and then motioned to her friend Kaavya with a sexual intercourse sign where she made a circle with her left index finger and thumb, and then put her right index finger inside the circle and moved her finger in and out of it. She did this twice. Mr. Premjee did not see Arshia make the sexual intercourse sign because she was standing behind him when she did it both times. It is unrefuted that Arshia made this sexual intercourse gesture to let her friend know she was going to have sex with Mr. Premjee. Video cameras in the front of the bar captured the gestures of sexual intercourse made by Arshia. In her statement to police, Kaavya stated that while they were at Banditos Bar, Arshia and Mr. Premjee looked happy and like they were having a good time.

21.     When the Uber arrived, Mr. Premjee and Arshia got in the back seat and there was another male passenger in the front seat. On the way to Mr. Premjee's fraternity house, the Uber driver picked up another female who sat in the back seat with Mr. Premjee and Arshia. During the ride, Arshia got on Mr. Premjee's lap and started aggressively kissing him on the mouth and neck. She also bit Mr. Premjee. Her behavior was violent and Mr. Premjee told her to take it easy and to stop. On information and belief, the Uber driver who observed Arshia's conduct toward Mr.

Premjee was interviewed early in the investigation by GAMINO and/or ZUNIGA, however, his recorded interview was not given to Mr. Premjee's defense attorney.

22.     When they arrived at Mr. Premjee's fraternity house, Arshia was not allowed to stay because the house was on probation.  Mr. Premjee called another Uber and when it arrived, Arshia sat in the back seat, and he sat in the front seat.  Mr. Premjee wanted to maintain distance from Arshia's aggressive public sexual behavior toward him.   This Uber took them to her dormitory, the Fluor Dormitory on USC campus.  A security guard was present to check in residents and their guests.  Arshia scanned her fingerprint and helped Mr. Premjee register as a guest which required that he leave his U.S.C identification in exchange for a guest pass.  Video cameras captured this and Mr. Premjee and Arshia waiting for the elevator.  Mr. Premjee and Arshia then took the elevator up to her dormitory on the 10th floor at around 1:04 a.m.  Once inside her dormitory, Mr. Premjee attempted to dissuade her from having sex and tried to leave.  Arshia grabbed him by the shirt and pulled him onto the air mattress in the living area of the dorm.  They started kissing and were having sex when Arshia's roommate ("Madison") walked into the living area.  Madison observed Arshia's legs wrapped around Mr. Premjee and heard her moaning.  Madison interpreted the moaning as that of someone enjoying sex.  Madison gave an initial interview to officers and reported seeing Arshia's legs wrapped around Mr. Premjee and she also reported her interpretation of the moans as being those of pleasure, however, GAMINO and ZUNIGA later aggressively re-interviewed Madison to have her change her initial witness account.

23.     The video shows Mr. Premjee left Arshia's building around 1:29 a.m.

24.     The total time from meeting Arshia for the first time at the Banditos Bar to leaving her dormitory was approximately one hour.  Mr. Premjee never bought her or gave her a drink, and Arshia never drank anything in front of him during that time.  Nor

was there any drug use during the time they were together.  At no time did Arshia lose consciousness in front of Mr. Premjee before or during sex, nor did she revoke her consent to sex at any time by words or actions.

### The Investigation

25.     Sometime around 4:00 a.m., April 1, 2017, LAPD police arrived to Arshia's dormitory and proceeded to interview witnesses.  Arshia had already been taken to the hospital by ambulance.  Roommate Tanika reported that she arrived home around 1:15 a.m. and saw a man having sex on a mattress in the living room.  She went into her bedroom and woke up her roommate "Celine."  They both stated they could hear Arshia having sex in the living room with a male. They recognized that it was Arshia by the sound of her moans, and Tanika stated that the moans sounded like "man and a woman moaning enjoying sex."  Celine confirmed this.  When the moaning stopped, they stepped out and saw Arshia lying naked on the air mattress.  Mr. Premjee, who was in the bathroom, stepped out, they confronted him and he apologized for waking them up and left.  Roommate "Seeley" was also interviewed.  She said that at around 1:20 a.m. she woke up to use the bathroom.  She walked past the living room where she "observed a couple having sex on the air mattress in the living room."  The police report indicates that she observed a man kneeling on the bed "with a woman's legs wrapped around his back."  Arshia's friend "Kaavya" was also interviewed.  She stated that Arshia had been "smoking weed all day" and that she and Arshia had gone to a fraternity party and then to Banditos Bar.  Around midnight, she said Arshia was hanging out with friends from Bombay, India, and that she seemed happy and was socializing.  Dorm security guard Ronniecia Stringfrilow was also interviewed.  She reported that she was working dorm security at 1:05 a.m. when she checked Arshia and Mr. Premjee into the dorm.  She observed Arshia "flirting" with Mr. Premjee, "hanging onto him and hugging him." The security guard described them as a "happy couple" and

stated that she "had a pleasant conversation with them."  Video cameras confirm this interaction.

26.     Mr. Premjee was arrested on April 1, 2017 in the early morning hours at his residence in the fraternity house and taken to the LAPD Southwest Station and placed in a cell.  Around 10:45 a.m., he was taken to the Rape Treatment Center at Santa Monica Hospital for a "Sexual Assault Suspect Examination."  Up to that time, no officer told him why he was being detained.  A nurse told him his arrest had to do with a sexual assault.  After the examination, he was transferred back to the Southwest Station around 1:00 p.m.

27.     Defendants GAMINO and ZUINIGA were detectives and partners at LAPD Robbery-Homicide Division, Special Assault Section.  They began investigating the alleged crime the same day, April 1.  They interviewed Arshia at approximately 11:00 a.m. at the hospital.  They did not tell her what they were investigating until the end of their interview.  The detectives started questioning Arshia about how much she had drank the night before.  She stated she could not remember anything about the events of the evening, except that she had gone to a fraternity party with her friend Kaavya.  She did not tell the detectives she had been smoking marijuana during the day of March 31.  Before the interview was concluded, she remembered that she and her friend Kaavya went to Banditos Bar after they left the fraternity and she purchased and drank two tequila shots.  She confirmed she used a fake i.d. to purchase alcohol.  She was upset she could not remember anything about the evening after just two shots of tequila when she had "10 jello shots" at Banditos Bar on St. Patrick's Day and had not "blacked out."  Towards the end of the interview, detectives Gamino and Zuniga revealed the true nature of their investigation, an alleged sexual assault upon her.  She became upset and claimed she did not remember the sex or Mr. Premjee.

28.     At 1:40 p.m., GAMINO and ZUNIGA met with Mr. Premjee.  They told him he was not under arrest, and they simply wanted to ask him some questions.  Mr. Premjee agreed to give a statement and he was read his Miranda rights.  At the end of the interview, Mr. Premjee provided the detectives written consent to conduct a Forensic Data Extraction of his cell phone for their review after they told him that if he did not provide the consent they could simply get a subpoena for it.  The detectives took Mr. Premjee's phone and then transported him to his residence where he was released.  At all times Mr. Premjee was polite and cooperative.

29.     On April 4, 2017, GAMINO and ZUNIGA conducted a follow up interview with Arshia.  She reiterated that she could not remember anything after having the two tequila shots at Banditos, but now she remembered she had three instead of two.  She also now remembered that she drank two Fireball shots at the fraternity house, whereas on April 1 she told the detectives she left the fraternity because they would not serve her any alcohol and got bored.  She agreed that the injuries she sustained on her face on April 1 were probably from falling on her face twice in her dorm room when she tried to stand up after Mr. Premjee had already left her dorm.  She continued to maintain she could not remember her contact with Mr. Premjee.

30.     At the preliminary hearing in July 2017, detective GAMINO admitted he became aware on April 6, 2017, that the police department had received the Banditos Bar security camera videos.  This video contained the images of Arshia making the sexual intercourse gesture with her fingers to Kaavya while Arshia stood behind Mr. Premjee.  It also contained the images of Mr. Premjee and Arshia's interaction at the bar kissing and hugging before they left.  Detective Gamino testified that he did not review the video until April 27, 2017.  But he submitted his report of his and Zuniga's investigation to the District Attorney before he reviewed the tape anyway, which led to

Mr. Premjee's arrest and charge of rape on April 11, 2017.  On April 12, 2017, GAMINO and ZUNIGA submitted a follow-up report to the District Attorney, again allegedly without reviewing the video.  After April 27, 2017, there is no written police report or other document that refers to the sexual intercourse gestures made by Arshia on the video, nor is there any report detailing the video accounts which depicts Arshia as the initiator of sexual advances toward Mr. Premjee.

31.    On April 4, 2017, Defendants GAMINO and ZUNIGA, allegedly went to conduct a follow-up interview Tankia after having read the April 1st police interview of Tanika where Tanika reported that the moans she heard sounded like "a woman moaning enjoying sex."   However, GAMINO and ZUNIGA nowhere mentioned in the official police report that they questioned Tanika about that statement.  Tanika also told the detectives that while Mr. Premjee was in still in the bathroom she yelled at Arshia for having sex in the living room, a common area.  The detectives did not include this in the report and only reported statements that Tanika was concerned that Arshia was unresponsive and "fuckin' drunk," naked on an air mattress in the living room. Tanika also told them she was a friend of Arshia for years and that Arshia was "extremely irresponsible as a person".  Tanika told the defendant detectives Arshia smoked marijuana that day and that "she smokes weed a lot, more than drinks alcohol, but when she drinks alcohol she goes out of control."   Tanika also told the detectives "there are times when she blacks out, but completely functioning, completely talking, like on her birthday party [in Bombay], she was dancing and having a good time as well … and I told her why do you drink so much that you don't remember your own party.  I saw her dancing, I saw her talking to other people.  I don't know why she blacks out.  She blacks out even though she's awake."  Tanika gave the detectives details of other instances of alleged "black outs" by Arshia, however, the Defendant detectives did not

include any of this information in the official police report to the district attorney and told Tanika they were only interested in the events of April 1.

32.     On April 10, 2017, defendant GAMINO conducted a telephone interview with Arshia's roommate "Seeley."   Plaintiff contends the purpose of this re-interview was to manipulate Seeley into changing her original accounts given to the police. Specifically, her observations of seeing Arshia's "legs wrapped around" Mr. Premjee's back, and the moans of pleasure she heard.  GAMINO used suggestive questioning to manipulate Seeley to change her original accounts which pointed to consensual sex between Arshia and Mr. Premjee.

33.     At some point before Mr. Premjee was arrested, Detectives GAMINO and ZUNIGA discovered a facebook thread from Arshia to Mr. Premjee dated the day after the alleged assault where she said words to the effect, "hey dude…I heard we fucked" and she could not find her purse.  Plaintiff is informed and believes they did not present this information to the District Attorney for consideration before he was charged.

34.     Detectives GAMINO and ZUNIGA interviewed the first Uber driver before April 11, 2017,  but claimed to have lost the audio recording of the first interview.  Plaintiff believes Detective GAMINO re-interviewed the Uber driver only after Plaintiff's criminal defense attorney put him on notice that he was aware the Uber driver was a material witness.

35.     On April 11, 2017, Arshia was interviewed by the District Attorney.  In addition to the information she had relayed previously to defendants Gamino and Zuniga, she now recalled seeing her friend "Jazz" at the Banditos Bar when she arrived with Kaavya.  Other than that, she reiterated she had no other memories of the events. She mentioned another "black out" incident at USC prior to this incident.

36.     Later on April 11, 2017, Mr. Premjee was placed under arrest and charged with California Penal Code 261(a)(4), rape by sexual intercourse with an unconscious

person, and sexual penetration by a foreign object.  The latter claim was dismissed by the prosecutor before the preliminary hearing.

37.     Mr. Premjee was arraigned on May 2, 2017, and was required to post a $200,000 bond.

38.     Even though the detectives had obtained the video from Banditos Bar as early as April 6 and GAMINO reviewed it by April 27, they never showed it to Arshia or Kaavya, or even questioned them about the sexual intercourse gesture Arshia made on it until July 19, 2017, a few days before the preliminary hearing, when they showed the video to Arshia via a Skype call.  Her mother was also on the call.  Notably, the detectives only showed her the small portion of the video where she made the sexual intercourse gesture.  They asked her if she remembered making the gesture and she said she did not, but she said it was "obvious" it meant she wanted to have sex with Mr. Premjee.  She also told the detectives after viewing the video, "I wasn't completely drunk in the video, I was able to walk, I just blacked out for some reason."  Once again, the detectives engaged in suggestive questioning in an attempt to get Arshia to state that she could have revoked her consent at any time prior to the sex.  The detective's interview of Arshia (and of other witnesses) establish a pattern of overly suggestive questioning by  GAMINO and ZUNIGA where they even suggest responses to questions, omit asking critical questions, and slant the questioning to avoid having to report the truth, all in an effort to maintain the charges against Plaintiff.

39.     In presenting their report to the District Attorney for consideration of a criminal charge, Defendants GAMINO, ZUNIGA and DOES 1-4 suppressed exculpatory evidence proving Mr. Premjee's innocence as to false claims of rape. These Defendants acted in reckless disregard for the truth and instead steered the information to fit the conclusion they wanted to reach, that is, that Mr. Premjee raped an unconscious woman.  Their concealment of exculpatory evidence and failure to present

it to Mr. Premjee's defense attorney and to the District Attorney in a timely manner led to his highly publicized criminal prosecution for rape.

40.     The defendant detectives' failure to turn over exculpatory evidence and engage in reckless disregard for Mr. Premjee's innocence forced him to defend himself in a bogus criminal prosecution, and in doing so he incurred a variety of legal expenses including, but not limited to, attorney's fees, investigation costs, and the costs of posting bail. The defendant detectives' suppression of evidence has damaged, and will continue to damage, Mr. Premjee for the rest of his life.  Reports of the alleged rape surfaced on news outlets, internet blogs, and other media.  An internet search of Mr. Premjee's name brings up dozens of articles claiming that he is an alleged rapist. Although the criminal charges against him were dismissed, he will forever be labeled a "rapist."  This damage to Mr. Premjee's reputation has impacted, and will continue to impact, his professional life, including his ability to secure employment in the future. Mr. Premjee's personal life has also been damaged as he was expelled from his fraternity and from USC.  Mr. Premjee's friends have distanced themselves from him because they do not want to be associated with an "accused rapist" and he will continue to have difficulty making new friends and having romantic relationships because of this unfortunate association.

### The Preliminary Hearing

41.     Mr. Premjee's preliminary hearing took place July 24, 25, and 26, 2017.

42.     The judge found there was consent to the sex by Arshia and there remained consent throughout without any indication that she withdrew the consent.  Further, the judge found there "was a very strong indication that the alleged victim in this case was the initiator of any conduct between" Mr. Premjee and Arshia which he considered as one factor in his evaluation, and "the continuing nature of consent is evident to this court."  The criminal charge was dismissed.

## Participation, State of Mind, and Damages

43.   All Defendants acted under color of law.

44.   Each Defendant participated in the violations alleged herein, or directed the violations alleged herein, or knew of the violations alleged herein and failed to act to prevent them. Each defendant ratified, approved and acquiesced in the violations alleged herein.

45.   As joint actors with joint obligations, each defendant was and is responsible for the failures and omissions of the other.

46.   Each Defendant acted individually and in concert with the other Defendants and others not named in violating Plaintiff's rights.

47.   Each Defendant acted with a deliberate indifference to or reckless disregard for an accused's rights for the truth in withholding evidence from prosecutors, and/or for the Plaintiff's right to an  witness statements free from improper suggestion, for an investigation free of active concealment of material facts, and/or for the Plaintiff's right to due process of law.

48.   As a direct and proximate result of the aforesaid acts, omissions, customs, practices, policies and decisions of Defendants, Plaintiff has suffered great mental and physical pain, suffering, anguish, fright, nervousness, anxiety, shock, humiliation, indignity, embarrassment, harm to reputation, and apprehension, which have caused Plaintiff to sustain damages in a sum to be determined at trial.

49.   Plaintiff was charged and arrested for a crime that never happened.  He was only 20 years old at the time he was arrested.  He was expelled from USC where he was a business major.  He suffered greatly from the being unable to pursue his academic studies and the stigma of an unsubstantiated rape charge.

50.   Due to the acts of the Defendants, Plaintiff has suffered and continues to suffer, and is likely to suffer in the future, extreme and severe mental anguish as well as

mental and physical pain and injury.  He will be impacted in his professional endeavors and ability to gain employment.  For such injury, Plainitff will incur significant damages.

51.     As a further result of the conduct of each of these defendants, Plaintiff has lost future earnings and earning capacity in an amount to be determined according to proof at trial.

## FIRST CLAIM FOR RELIEF

### Deprivation of Civil Rights – Arrest without Probable Cause (42 U.S.C. § 1983) (Against GAMINO, ZUNIGA, and DOES 1-4)

52.     Plaintiff repeats and re-alleges each and every allegation in paragraphs 1 through 51 of this Complaint with the same force and effect as if fully set forth herein.

53.     The Fourth Amendment of the United States Constitution guarantees all persons the right to be free from unreasonable searches and seizures, including the right to be free from arrest without probable cause. 42 U.S.C. § 1983 provides a private right of action for conduct which violates this right.

54.     Defendants Gamino and Zuniga and DOES 1-4 acted under color of law.

55.     Defendants Gamino and Zuniga and DOES 1-4 had exculpatory evidence which established consent to the sex between Mr. Premjee and Arshia which they did deliberated failed to document and did not share with the district attorney.  No reasonable district attorney would have brought charges against Mr. Premjee with this information.  This set into motion his criminal prosecution.  Moreover, in order to ensure Plaintiff's prosecution that Mr. Premjee raped an unconscious woman, Defendants Gamino and Zuniga re-interviewed witnesses whose initial statements to police confirmed consensual sex getting them to backtrack and change their original statements.

56.     The only basis for the arrest of Mr. Premjee was the skewed investigation of detectives Gamino and Zuniga and their omission of evidence which clearly established and corroborated Arshia's consensual sex with Mr. Premjee. Defendants Gamino and Zuniga knew or should have known the evidence supported consensual sex, and any doubts to the contrary were elicited by them of witnesses by improper suggestion or influence. At all relevant times, Gamino and Zuniga and DOES 1-4 knew or should have known Mr. Premjee was innocent.

57.     Defendants named herein, and each of them, were motivated by bad faith in that Defendants had a preference toward getting Mr. Premjee charged and found guilty of a crime which never happened, and their conduct was done with deliberate indifference to and/or reckless disregard of Plaintiff's rights or for the truth.

58.     When Defendants caused Plaintiff to be arrested on April 1, 2017 and on April 11, 2017, without probable cause, they violated his right to be secure in his person against unreasonable searches and seizures as guaranteed to him under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

59.     As a direct and proximate result of the aforementioned conduct, Plaintiff was wrongfully prosecuted, suffered a loss of liberty, suffered economic damages and emotional distress, great mental and physical pain, suffering, anguish, fright, nervousness, anxiety, shock, humiliation, indignity, embarassment, harm to reputation, and apprehension, which have caused Plaintiff to sustain damages in a sum to be determined at trial. He also will continue to suffer damages including future loss of earnings and earning capacity in a sum to be determined at trial.

60.     The conduct of Defendants Gamino and Zuniga and DOES 1-4 was willful, wanton, malicious, and done with an evil motive and intent and a reckless

---

disregard for the rights and safety of Plaintiff and therefore warrants the imposition of exemplary and punitive damages.

61.     Plaintiff brings this claim individually and seeks general and special damages, in an amount to be determined at trial. Plaintiff also seeks reasonable costs and attorney's fees under 42 U.S.C. §1988.

## SECOND CLAIM FOR RELIEF

### Deprivation of Civil Rights – Concealment of Evidence Violations (42 U.S.C. §1983)

### (Against GAMINO, ZUNIGA and DOES 1-4)

62.     Plaintiff repeats and re-alleges each and every allegation in paragraphs 1 through 61 of this Complaint with the same force and effect as if fully set forth herein.

63.     Defendants Gamino and Zuniga and DOES 1-4, while acting under color of law, deprived Plaintiff of his civil rights, more particularly, his right to due process of law, by concealing evidence from reports, improperly influencing witnesses and concealing evidence, that resulted in depriving Mr. Premjee of liberty because they set in motion a reasonably foreseeable chain of events that led to his arrest without probable cause and criminal prosecution.

64.     Defendants Gamino and Zuniga and DOES 1-4 had exculpatory evidence which established consent to the sex between Mr. Premjee and Arshia which they did not document nor shared it with the district attorney.  No reasonable district attorney would have brought charges against Mr. Premjee with this information.  This set into motion his criminal prosecution.  Defendants knew or should have known the exculpatory evidence as detailed above should have been provided to the district attorney in a timely manner.  Defendants knew or should have known that the statements they elicited from re-interviewed witnesses about a lack of consent to sex were misleading and resulted from the undue influence of Gamino and Zuniga to get

these witnesses to change their statements in a way that cast doubt on Arshia's consent to the sex. At all relevant times, Gamino and Zuniga and DOES 1-4 knew or should have known Mr. Premjee was innocent or at the very least that they did not have any evidence supporting a revocation of consent to sex by Arshia at any time.  In addition, even after they reviewed the video footage from Banditos Bar [Gamino testified the tape was reviewed on April 27] and saw the sexual intercourse gesture Arshia made and saw how she and Mr. Premjee were acting with each other inside the bar, they made no effort to notify the district attorney, and no writing confirms this evidence was ever relayed to the district attorney.  Indeed, Detectives Gamino and Zuniga only showed the video to Arshia and only asked her if she remembered making the sexual gesture on July 19, only five days before the preliminary hearing after prompting by Mr. Premjee's criminal defense attorney. Defendants ignored evidence pointing to consensual sex, intentionally between Arshia and Mr. Premjee and were deliberately indifferent to Mr. Premjee's constitutional rights and the truth, and deliberately turned their backs on the truth in order to cause the arrest and prosecution of an innocent person.  They ignored exculpatory evidence which negated any probable cause to arrest Mr. Premjee. Defendants Gamino and Zuniga and Does 1-4 failed to take action to rectify Mr. Premjee's wrongful arrest and prosecution.  Defendants' conduct was done with deliberate indifference to and/or reckless disregard of Plaintiff's rights or for the truth.

65.    Defendants also caused the fabrication of police reports that were incomplete or contained material omissions. Detectives Gamino and Zuniga and Does 1-4 learned information about Arshia that pointed to consensual sex but omitted such information from related police reports and did not provide such information to the prosecution, as alleged above.

66.    Defendants Gamino and Zuniga and DOES 1-4 knew or should have known that evidence they selected to document was misleading and elicited by

suggestive questioning techniques and undue influence, and that the witnesses were changing their original statements to the police as a result of these techniques. Defendants' conduct was done with deliberate indifference to and/or reckless disregard of Plaintiff's rights or for the truth.

67.     The constitutional source against using false or manipulated evidence is primarily the due process clause of the Fourteenth Amendment, and Plaintiff's due process rights were violated by the conduct alleged herein. Plaintiff brings this claim as both a procedural and substantive due process violation. To the extent that any court were to conclude that the source of Plaintiff's right to be free from false evidence being used against him that led to a wrongful criminal prosecution, is any constitutional source other than due process (such as the Fourth Amendment or Sixth Amendment right to a fair trial), this claim is brought on those bases as well.

68.     Defendants Gamino and Zuniga and DOES 1-4 were each jointly and severally responsible to not use or elicit false evidence against Mr. Premjee. Each engaged in, knew or should have known of the unconstitutional conduct alleged herein and failed to prevent it, which each had a responsibility to do, and each ratified, approved or acquiesced in it.

69.     As a direct and proximate result of the aforementioned conduct, Plaintiff was wrongfully arrested and prosecuted and suffered a loss of liberty, economic damages and emotional distress, great mental and physical pain, suffering, anguish, fright, nervousness, anxiety, shock, humiliation, indignity, embarassment, harm to reputation, and apprehension, which have caused Plaintiff to sustain damages in a sum to be determined at trial.  He also will continue to suffer damages including future loss of earnings and earning capacity in a sum to be determined at trial.

70.     The conduct of Defendants Gamino and Zuniga and Does 1-4 was willful, wanton, malicious, and done with an evil motive and intent and a reckless disregard for

the rights and safety of Plaintiff and therefore warrants the imposition of exemplary and punitive damages.

71.     Plaintiff brings this claim individually and seeks general and special damages, in an amount to be determined at trial. Plaintiff also seeks reasonable costs and attorney's fees under 42 U.S.C. § 1988.

### THIRD CLAIM FOR RELIEF

### Deprivation of Civil Rights – *Brady* Violations (42 U.S.C. § 1983)

### (Against GAMINO, ZUNIGA and DOES 1-4)

72.     Plaintiff repeats and re-alleges each and every allegation in paragraphs 1 through 71 of this Complaint with the same force and effect as if fully set forth herein.

73.     Defendants Gamino and Zuniga and Does 1-4, while acting under color of law, deprived Plaintiff of his civil rights by failing to produce to the prosecution material exculpatory and impeachment evidence and information as required by *Brady v. Maryland*, 373 U.S. 83 (1963) (hereinafter *Brady* information).

74.     Defendants' conduct was done with deliberate indifference to and/or reckless disregard of Plaintiff's rights or for the truth. There is a reasonable probability that had the evidence been disclosed or had the original statements of the witnesses not been re-cast by Defendants' undue influence or unduly suggestive questioning techniques, the district attorney would never have filed charges against Mr. Premjee. At all relevant times, Defendants Gamino and Zuniga and Does 1-4 knew or should have known Mr. Premjee was innocent or at the very least that they did not have any evidence supporting a revocation of consent to sex by Arshia at any time.  In addition, Defendants Gamino and Zuniga and DOES 1-4 failed to take action to rectify Mr. Premjee's wrongful arrest and prosecution.  Defendants' conduct was done with deliberate indifference to and/or reckless disregard of Plaintiff's rights or for the truth.

75.     The constitutional source of the obligation to provide *Brady* information is primarily the due process clause of the Fourteenth Amendment, and Plaintiff's due process rights were violated by the conduct alleged herein. Plaintiff brings this claim as both a procedural and a substantive due process violation. To the extent that any court were to conclude that the source of Plaintiff's right to Brady information is a constitutional source other than due process (such as the Fourth Amendment or Sixth Amendment right to a fair trial), this claim is brought on those bases as well.

76.     Defendants Gamino and Zuniga and Does 1-4 were each jointly and severally responsible to provide *Brady* information to the prosecutors handling the Premjee case and so that it could be in turn be provided to the defense. Each engaged in, knew or should have known of the unconstitutional conduct alleged herein and failed to prevent it, which each had a responsibility to do, and each ratified, approved or acquiesced in it.

77.     As a direct and proximate result of the aforementioned conduct, Plaintiff was wrongfully arrested and prosecuted, and suffered a loss of liberty, economic damages and emotional distress, great mental and physical pain, suffering, anguish, fright, nervousness, anxiety, shock, humiliation, indignity, embarrassment, harm to reputation, and apprehension, which have caused Plaintiff to sustain damages in a sum to be determined at trial.  He also will continue to suffer damages including future loss of earnings and earning capacity in a sum to be determined at trial.

78.     The conduct of Defendants Gamino and Zuniga and Does 1-4 was willful, wanton, malicious, and done with an evil motive and intent and a reckless disregard for the rights and safety of Plaintiff and therefore warrants the imposition of exemplary and punitive damages.

79.     Plaintiff brings this claim individually and seeks general and special damages, in an amount to be determined at trial. Plaintiff also seeks reasonable costs and attorney's fees under 42 U.S.C. § 1988.

## FOURTH CLAIM FOR RELIEF

### Deprivation of Civil Rights – *Monell* Violations (42 U.S.C. § 1983)
### (Against CITY OF LOS ANGELES and Does 5-8)

80.     Plaintiff repeats and re-alleges each and every allegation in paragraphs 1 through 79 of this Complaint with the same force and effect as if fully set forth herein.

81.     The conduct of Defendants Gamino and Zuniga and Does 1-4 as alleged above led to deprivations of Plaintiff's constitutional rights, causing his wrongful arrest, incarceration, and prosecution. They acted pursuant to an expressly adopted official policy or longstanding practice or custom of Defendants City of Los Angeles and policymakers Does 5-8.

82.     Plaintiff is informed and believes and thereupon alleges that, at all times herein mentioned, Defendant City of Los Angeles and Does 5-8, with deliberate indifference and conscious and reckless disregard to the safety, security and constitutional and statutory rights of Plaintiff, engaged in the unconstitutional conduct and omissions, which consist of the following customs and/or policies:

        a.     The knowing concealment of material evidence by officers;

        b.     The deliberately indifferent concealment of material evidence by officers in reckless disregard for the truth or the rights of the accused;

        c.     The practice of re-interviewing witnesses in an unduly suggestive manner and with undue influence such that testimony is changed or re-cast in a way that now supports a criminal charge and ignoring evidence to the contrary;

        d.     Officers' failure to provide exculpatory evidence to prosecutors trying the case involving the criminal defendant;

e.      Failing to adequately train, supervise and control its officers in the investigation and questioning of eyewitnesses, including the prevention of unconstitutional influence of eyewitnesses;

f.      Failing to adequately train, supervise and control its officers to disclose to the deputy district attorney prosecuting a defendant all exculpatory and impeachment information, including *Giglio v. United States*, 405 U.S. 150 (1972) and *Brady* information, which would include alternative theories which would support the defense;

g.      Failing to adequately discipline officers involved in dishonesty or otherwise abusing their authority;

h.      Condoning and encouraging officers in the belief that they can violate the rights of persons such as Mr. Premjee without impunity, and that such conduct will not adversely affect their opportunities for promotion and employment benefits; and

i.      Condoning and encouraging the fabrication of evidence including but not limited to the filing of materially incomplete police reports, failing to provide material evidence to prosecutors, improperly influencing witnesses, the use of techniques to influence statements to law enforcement in order to obtain the filing of false charges and obtaining false convictions.

83.      The actions and inactions of the LAPD were known or should have been known to the policy makers responsible for the LAPD and occurred with deliberate indifference to either the recurring constitutional violations elaborated above, and/or the strong likelihood that constitutional rights would be violated as a result of failing to train, supervise or discipline in areas where the need for such training and supervision was obvious.

84.     Training policies of the City of Los Angeles were inadequate to train officers to handle the usual and recurring situations with which they must deal.

85.     The final policymakers DOES 5-8 acted under color of state law. They had final policymaking authority from the municipal Defendant City of Los Angeles concerning the acts and failures of the individual defendants. On information and belief, these final policymakers ratified the acts of Defendants Gamino and Zuniga and Does 1-4, that is, Does 5-8 knew of and specifically made a deliberate choice to approve Gamino's and Zuniga's and Does 1-4's acts and failures to act.

86.     The actions and inactions of the LAPD set forth herein caused and resulted in Plaintiff's wrongful arrest, incarceration, and prosecution, and/or are so closely related to the deprivation of Plaintiff's constitutional rights as to be the moving force that caused Plaintiff's injuries as set forth in the Complaint.

87.     As a direct and proximate result of Defendant City of Los Angeles' acts and omissions, condoning, encouraging, ratifying and deliberately ignoring the pattern and practice of Defendants Gamino and Zuniga and Does 1-4's acts and omissions, Plaintiff sustained injury and damage.

88.     As a result of Defendants', and each of their, violations of Mr. Premjee's constitutional rights as set forth herein, Mr. Premjee was damaged as alleged above.

## FIFTH CLAIM FOR RELIEF

**Malicious Prosecution (California Common Law and 42 U.S.C. § 1983)**

**(Against GAMINO, ZUNIGA, CITY OF LOS ANGELES, DOES 1-4 and 9-10)**

89.     Plaintiff repeats and re-alleges each and every allegation in paragraphs 1 through 88 of this Complaint with the same force and effect as if fully set forth herein.

90.     Defendants Gamino, Zuniga, City of Los Angeles, Does 1-4 and 9-10, while acting under color of law, deprived Plaintiff of his civil rights, more particularly, his right to be free from malicious prosecution.

91.     The defendants contributed to and caused the initiation of a criminal prosecution against Mr. Premjee with malice and/or with the purpose of depriving him of his constitutional rights. They did not have probable cause to arrest or prosecute him. The prosecution ultimately terminated in Mr. Premjee's favor, with the sole charge against him being dismissed at the preliminary hearing.  Defendants knew or should have known the sex between Mr. Premjee and Arshia was at all times consensual. At all relevant times, Defendants knew or should have known Mr. Premjee was innocent, or at the very least that they had ample evidence supporting consensual sex between Arshia and Mr. Premjie and no evidence to support revocation of consent to sex by Arshia at any time.

92.     Plaintiff brings this claim under both California state and federal law. The constitutional source against malicious prosecution is primarily the due process clause of the Fourteenth Amendment, and Plaintiff's due process rights were violated by the conduct alleged herein. Plaintiff brings this claim as both a procedural and substantive due process violation. To the extent that any court were to conclude that the source of Plaintiff's right to be free from malicious prosecution is any constitutional source other than due process (such as the Fourth Amendment or Sixth Amendment right to a fair trial), this claim is brought on those bases as well.

93.     Defendants Gamino, Zuniga, Does 1-4 and 9-10 were each jointly and severally responsible not to bring a malicious prosecution against Mr. Premjee.  Each engaged in, knew or should have known of the unconstitutional conduct alleged herein and failed to prevent it, which each had a responsibility to do, and each ratified, approved or acquiesced in it.

94.     City of Los Angeles is vicariously liable for the wrongful acts of Gamino, Zuniga, and Does 1-4 pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees

within the scope of employment if the employee's act would subject him or her to liability.

95.     As a direct and proximate result of the aforementioned conduct, Plaintiff was wrongfully arrested and prosecuted and suffered a loss of liberty, economic damages and emotional distress, great mental and physical pain, suffering, anguish, fright, nervousness, anxiety, shock, humiliation, indignity, embarassment, harm to reputation, and apprehension, which have caused Plaintiff to sustain damages in a sum to be determined at trial.  He also will continue to suffer damages including future loss of earnings and earning capacity in a sum to be determined at trial.

96.     The conduct of Defendants Gamino and Zuniga and Does 1-4 was willful, wanton, malicious, and done with an evil motive and intent and a reckless disregard for the rights and safety of Plaintiff and therefore warrants the imposition of exemplary and punitive damages.

97.     Plaintiff brings this claim individually and seeks general and special damages in an amount to be determined at trial. Plaintiff also seeks reasonable costs and attorney's fees under 42 U.S.C. § 1988.

## SIXTH CLAIM FOR RELIEF

### Negligence/Negligent Training and Supervision

### (Against GAMINO, ZUNIGA, BECK, CITY OF LOS ANGELES, and DOES 1-4 AND 9-10)

98.     Plaintiff repeats and re-alleges each and every allegation in paragraphs 1 through 97 of this Complaint with the same force and effect as if fully set forth herein.

99.     Police officers, including Defendants Gamino and Zuniga and Does 1-4, have a duty to use reasonable care to prevent harm or injury to others. This duty includes, but is not limited to, not arresting persons without reasonable suspicion or probable cause; not using improper, suggestive, or coercive techniques to procure false

evidence; using false evidence; fabricating evidence; failing to disclose exculpatory evidence; and not maliciously arresting or causing the wrongful prosecution of innocent persons.  Law enforcement agencies also have a duty to properly hire, train, and supervise police officer employees.

100.   Defendants Gamino and Zuniga and Does 1-4 breached this duty of care. Upon information and belief, the actions and inactions of Defendants were negligent and reckless, including but not limited to:

(a)   The failure to properly and adequately assess the need to detain and arrest Plaintiff;

(b)   Arresting Plaintiff without probable cause or reasonable suspicion;

(c)   Using improper, suggestive, or coercive techniques to procure changes in prior statements that would better support a criminal charge;

(d)   Failing to disclose exculpatory evidence to the district attorney in a timely manner;

(e)   Causing the wrongful arrest and prosecution of Plaintiff.

101.   Each of the individual Defendants, except Beck, knew or should have known the exculpatory evidence and should have been turned over to the district attorney in a timely manner.  Each of these Defendants knew or should have known changes in witness statements in follow up interviews were procured by improper suggestion or influence.  At all relevant times, Defendants knew or should have known Mr. Premjee was innocent or at the very least that they did not have any evidence supporting a revocation of consent to sex by Arshia at any time.

102.   Defendant Charlie Beck also failed to properly hire, train, and supervise

police officer employees including Gamino and Zuniga in order to prevent the wrongful arrest and prosecution of Plaintiff.  Defendant Beck had a duty as the chief of the LAPD to maintain and enforce policies regarding investigation of criminal charges by his subordinates and ensure that innocent individuals are not wrongfully prosecuted.

103.   City of Los Angeles is vicariously liable for the wrongful acts of Gamino and Zuniga and Does 1-4 pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of employment if the employee's act would subject him or her to liability.

104.   As a direct and proximate result of the aforementioned conduct, Plaintiff was wrongfully arrested and prosecuted and suffered a loss of liberty, economic damages and emotional distress, great mental and physical pain, suffering, anguish, fright, nervousness, anxiety, shock, humiliation, indignity, embarassment, harm to reputation, and apprehension, which have caused Plaintiff to sustain damages in a sum to be determined at trial.  He also will continue to suffer damages including future loss of earnings and earning capacity in a sum to be determined at trial.

105.   The conduct of Defendants Gamino, Zuniga, and Does 1-4, 9-10 was grossly negligent and showed reckless disregard for the rights and of Plaintiff.

106.   Plaintiff brings this claim individually and seeks general and special damages in an amount to be determined at trial.

## SEVENTH CLAIM FOR RELIEF

### Bane Act Violation – Cal. Civil Code §§51 et seq. and 52.1

### (Against GAMINO, ZUNIGA, CITY OF LOS ANGELES, and DOES 1-4 AND 9-10)

107.   Plaintiff repeats and re-alleges each and every allegation in paragraphs 1 through 106 of this Complaint with the same force and effect as if fully set forth herein.

108.    Defendants acting within the scope of their duties as City of Los Angeles detectives wrongfully caused Plaintiff to be arrested, put in jail, and subjected to criminal felony charges due to coercion, intimidation, and threats in violation of Civil Code Sections 51 et seq. and 52.1.

109.    Pursuant to Cal. Government Code 815.2, Defendant City of Los Angeles is hereby liable for the acts, omissions, and conducts of its employees, including Defendants herein, whose tortious conduct was a cause in the damages and injuries to Plaintiff.

110.    Plaintiff timely filed a claim for damages pursuant to Cal. Government Code §910 et seq. The claim was rejected on December 5, 2017.   The true facts were fraudulently concealed by Defendants and not discovered by Plaintiff until May 23, 2017.

111.    The conduct of Defendants constituted interference by threats, intimidation, or coercion, or attempted interference, with the exercise of enjoyment by Plaintiff of rights secured by the Constitution of the laws of the United States, or secured by the Constitution or laws of the State of California, including interference with Mr. Premjee's rights to be secure in his person and free from unlawful arrest under the Fourth Amendment and Cal. Const. Art. 1, sec. 13 as well as Cal. Civ. Code §43.

112.    As a direct cause of Defendants' conduct, Plaintiff's rights pursuant to California Civil Code §52.1 were violated, causing injuries and damages in an amount to be proved at the time of trial.

113.    Due to the conduct of Defendants, and each of them, Plaintiff has been required to incur attorney's fees and will continue to incur attorney's fees.

///

///

# EIGHTH  CLAIM FOR RELIEF

## FALSE ARREST AND FALSE IMPRISONMENT

### (Against All Defendants except BECK)

114.   Plaintiff repeats and re-alleges each and every allegation in paragraphs 1 through 106 of this Complaint with the same force and effect as if fully set forth herein.

115.   Defendants' actions wrongfully deprived Plaintiff of his liberty in violation of California law.  Plaintiff was detained, arrested and/or incarcerated against his will for an unreasonable time and for a crime he did not commit.

116.   Defendant CITY is subject to liability pursuant to Cal. Gov't Code Section 815.2(a) which provides that "[a] public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative."  The following defendants are employees of defendant CITY:  Gamino, Zuniga and DOES 1-4.  They are subject to liability pursuant to Cal. Gov't Code §820.(a), which provides that "a public employee is liable for injury caused by his act or omission to the same extent as private person."

117.   As a direct and proximate cause of defendants' conduct, plaintiff has suffered damages, including emotional distress.  Defendants' acts were intentional and done with malicious and oppressive intent. Plaintiff is entitled to special and general damages in amounts to be proven at trial. Plaintiff is also entitled to punitive damages because Defendants acted maliciously, intentionally or with callous or reckless disregard for Plaintiff's rights and damages in an amount to be proven at time of trial.

///

///

# NINTH CLAIM FOR RELIEF

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### (Against All Defendants except BECK)

118.   Plaintiff realleges and incorporates by reference, as though fully and set forth herein, each and every allegation set forth in paragraphs 1 through 117 above.

119.   Defendants engaged in outrageous conduct towards Plaintiff with the intention to cause, or with reckless disregard for the probability of causing, plaintiff to suffer severe emotional distress, and with wanton reckless disregard for the injurious result to plaintiff. As set forth in detail above under "Facts Common to all Claims for Relief" defendants engaged in outrageous conduct designed to ensure that Plaintiff be prosecuted for crimes he did not commit, and Defendants acted in a manner intended to humiliate and embarrass Plaintiff.

120.   Defendant CITY is subject to liability pursuant to Cal. Gov't Code §815.2(a), which provides that "[a] public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of this employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative." The following defendants are employees of defendant CITY: GAMINO, ZUNIGA and DOES 1-4. They are subject to liability pursuant to Cal. Gov't Code §820.(a), which provides that "a public employee is liable for injury caused by his act or omission to the same extent as a private person."

121.   As a direct and proximate cause of defendants' conduct plaintiff has suffered severe emotional distress.  Defendants' acts were intentional and done with malicious and oppressive intent. Plaintiff is entitled to general and compensatory damages in amounts to be proven at trial.  Plaintiff is also entitled to punitive damages

because the individually named defendants, acted maliciously, intentionally or with callous or reckless disregard for Plaintiff's rights.

## **PRAYER**

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1. For general and special damages according to proof;
2. For exemplary damages as provided by law; in an amount to be proved against each individual Defendant;
3. For attorney's fees pursuant to 42 U.S.C. 1985 and 1988;
4. For costs of suit;
5. For such other and further relief as the Court may deem proper.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues.

Dated:  June 5, 2018            LAW OFFICES OF DALE K. GALIPO
                               LAW OFFICE OF VICKI I. SARMIENTO


                               By:  _/s/ Vicki I. Sarmiento_
                                    Vicki I. Sarmiento, Esq.
                                    Dale K. Galipo, Esq.
                                    *Attorneys for Plaintiff*