1 | **MICHAEL N. FEUER,** City Attorney (SBN 111529x)
2 | **JAMES P. CLARK**, Supervising/Managing Attorney (64780)
  | **CORY M. BRENTE,** Supervising Assistant City Attorney (SBN 115453)
3 | **ELIZABETH FITZGERALD,** Deputy City Attorney (SBN 158917)
4 | **REBEKAH W. YOUNG**, Deputy City Attorney (SBN 214859)
  | 200 N. Main Street, 6th Floor, City Hall East
5 | Los Angeles, California 90012
  | Phone: (213) 978-7560 / Fax: (213) 978-8785
6 | Email: elizabeth.fitzgerald@lacity.org
  | Email: Rebekah.young@lacity.org
7 | *Attorneys for Defendants* **CITY OF LOS ANGELES, CHARLIE BECK, OSCAR**
8 | **GAMINO and CARLA ZUNIGA**

9 | **UNITED STATES DISTRICT COURT**

10 | **CENTRAL DISTRICT OF CALIFORNIA**

11 |

| | |
|---|---|
| 12  ARMAAN KARIM PREMJEE, | **Case No. CV18-04998 AB (ROA)** |
| 13 | *Hon Judge: Andre Birotte, Jr.; Crtm 7B* |
|  Plaintiffs, | *Hon Magistrate Judge: Rozella A. Oliver* |
| 14 | |
|  vs. | **DEFENDANTS' STATEMENT OF** |
| 15 | **UNCONTROVERTED FACTS AND** |
|  CITY OF LOS ANGELES, CHIEF | **LAW** |
| 16  CHARLIE BECK, DETECTIVE OSCAR | |
| 17  GAMINO, and DETECTIVE CARLA | [Filed concurrently with Defendants' |
|  ZUNIGA, | Notice of Motion and Motion for |
| 18 | Summary Judgment; Declaration of |
|  Defendants. | Oscar Gamino; Declaration of Elizabeth |
| 19 | T. Fitzgerald; Exhibits; and Proposed |
| 20 | Order] |
| 21 | Hearing Date: September 13, 2019 |
|  | Time:  10:00 a.m. |
| 22 | Court:  7B, 350 W. 1st Street |
| 23 | |

| UNCONTROVERTED FACT | SUPPORTING EVIDENCE |
|---|---|
| 1.  On Friday March 31, 2017 an intoxicated USC student (Arshia) went to a bar called Banditos and consumed shots of alcohol | Various police reports attached as Exhibit "B" to the Declaration of Elizabeth T. Fitzgerald at paragraph 3. |

| | |
|---|---|
| 2.  The next morning, Arshia woke up in a hospital room with two detectives from LAPD's Special Assault Section by her side and no memory of anything that had happened after she had gone to the Bandito's Bar the prior night except that she was feeling suffocated and unable to breathe. | Various police reports attached as Exhibit "B" to the Declaration of Elizabeth T. Fitzgerald at paragraph 3. |
| 3.  Arshia who had a .32 blood alcohol content when admitted to California Hospital was treated for alcohol poisoning. | Various police reports attached as Exhibit "B" to the Declaration of Elizabeth T. Fitzgerald at paragraph 3. |
| 4.  Arshia learned that she had left the bar with a fellow USC student, Plaintiff Armaan Premjee (Premjee) and had accompanied him to his fraternity house. | Various police reports attached as Exhibit "B" to the Declaration of Elizabeth T. Fitzgerald at paragraph 3. |
| 5.  Arshia also learned, when viewing a video of her outside of Bandito's that she had made a sign with her hands indicating that she intended to have sex with Premjee; however when shown the video she did not recall having made the gesture. | Various police reports attached as Exhibit "B" to the Declaration of Elizabeth T. Fitzgerald at paragraph 3. |

| | |
|---|---|
| 6.  Premjee's fraternity brothers, Austin Ridgeway and Frank Ametti observed that Arshia was extremely intoxicated and directed Premjee to put Arshia in an Uber and send her back to her residence – Fluor Hall dormitory. | Various police reports attached as Exhibit "B" to the Declaration of Elizabeth T. Fitzgerald at paragraph 3. |
| 7.  Premjee told his fraternity brothers that he was going to have Arshia sleep it off in his room, but the fraternity brothers objected and demanded that Premjee call an Uber. | Various police reports attached as Exhibit "B" to the Declaration of Elizabeth T. Fitzgerald at paragraph 3. |
| 8.  Premjee, according to the fraternity brothers, then pretended to call an Uber and attempted to bring Arshia into his room. | -Preliminary Transcript Vol. 1 at 23-25, Exhibit "A" to the Declaration of Elizabeth T. Fitzgerald |
| 9.  The fraternity brothers then demanded that Premjee call an Uber – for real this time – and they observed him call the Uber. | -Preliminary Transcript Vol. 1 at 25, Exhibit "A" to the Declaration of Elizabeth T. Fitzgerald |
| 10.  The fraternity brothers directed Premjee to put Arshia into the Uber and send her home without him; however when the Uber came, Premjee got into the Uber with Arshia. | -Preliminary Transcript Vol. 1 at 25-26, Exhibit "A" to the Declaration of Elizabeth T. Fitzgerald |

| 11. At Fluor Hall, Arshia signed Premjee in as her guest and could be seen stumbling and having difficulty pushing the elevator button on security video retrieved by LAPD. | -Preliminary Hearing Transcript Vol. 2 at 230, Exhibit "A" to the Declaration of Elizabeth T. Fitzgerald<br>Various police reports attached as Exhibit "B" to the Declaration of Elizabeth T. Fitzgerald at paragraph 3. |
|---|---|
| 12. Premjee walked with Arshia to her room and the two had sex in the common area of Arshia's dorm room. | -Deposition of Detective Oscar Gamino at 69, Exhibit "C" to the Declaration of Elizabeth T. Fitzgerald<br>Various police reports attached as Exhibit "B" to the Declaration of Elizabeth T. Fitzgerald at paragraph 3. |
| 13. Either during the sex or immediately after Arshia became unconscious. | Various police reports attached as Exhibit "B" to the Declaration of Elizabeth T. Fitzgerald at paragraph 3. |
| 14. Premjee then went into the bathroom, half clothed and used the restroom. | -Preliminary Hearing Transcript Vol. 1 at 57-60, Exhibit "A" to the Declaration of Elizabeth T. Fitzgerald<br>Various police reports attached as Exhibit "B" to the Declaration of Elizabeth T. Fitzgerald at paragraph 3. |

| | |
|---|---|
| 15.  Arshia's roommates discovered Premjee having sex with Arshia and spoke angrily to him. | -Preliminary Hearing Transcript Vol. 1 at 57-60, Exhibit "A" to the Declaration of Elizabeth T. Fitzgerald Various police reports attached as Exhibit "B" to the Declaration of Elizabeth T. Fitzgerald at paragraph 3. |
| 16.  Arshia's roommates were unable to wake her and an ambulance was called. | -Preliminary Hearing Transcript Vol. 1 at 62, Exhibit "A" to the Declaration of Elizabeth T. Fitzgerald Various police reports attached as Exhibit "B" to the Declaration of Elizabeth T. Fitzgerald at paragraph 3. |
| 17.  Premjee sent a text message to a friend as soon as he left the dorm room, asking whether his actions qualified as a sexual assault. | -4/12/17 Report at 4-5, Exhibit "B" to the Declaration of Elizabeth T. Fitzgerald and Exhibit "1" to the Deposition of Detective Oscar Gamino Various police reports attached as Exhibit "B" to the Declaration of Elizabeth T. Fitzgerald at paragraph 3. |
| 18.  "Bro I fucked up," he began. "Or at least I think I did." | Various police reports attached as Exhibit "B" to the Declaration of Elizabeth T. Fitzgerald at paragraph 3. |

| | |
|---|---|
| 19. In the message Premjee admitted that Arshia was "blackout drunk: when she met him and was "still blackout drunk" when they had sex. | -4/12/17 Report at 4-5, Exhibit "B" to the Declaration of Elizabeth T. Fitzgerald and Exhibit "1" to the Deposition of Detective Oscar Gamino<br><br>Various police reports attached as Exhibit "B" to the Declaration of Elizabeth T. Fitzgerald at paragraph 3. |
| 20. "She couldn't walk straight" Premjee said. | Various police reports attached as Exhibit "B" to the Declaration of Elizabeth T. Fitzgerald at paragraph 3. |
| 21. "Even during sex" he added, "she was sloppy and all over the place." | Various police reports attached as Exhibit "B" to the Declaration of Elizabeth T. Fitzgerald at paragraph 3. |
| 22. Premjee also admitted that he had lied to Arshia's dormmates telling them that he was also extremely drunk, like Arshia, when in fact he was only "mildly drunk." | Various police reports attached as Exhibit "B" to the Declaration of Elizabeth T. Fitzgerald at paragraph 3. |
| 23. Premjee's friend responded: "Technically, it's wrong, as her decision making would be hazed." | Various police reports attached as Exhibit "B" to the Declaration of Elizabeth T. Fitzgerald at paragraph 3. |

| | |
|---|---|
| 24.  The friend also advised Premjee to "[m]aintain that you were as drunk as her if not worse. That way, you cannot be blamed." | Various police reports attached as Exhibit "B" to the Declaration of Elizabeth T. Fitzgerald at paragraph 3. |
| 25.  On April 1, 2017 Arshia texted Premee the following message: "Hey dude…I was told that I was with your Friday night.  I was also told that we fucked. I do not remember because I was very out of it. Obviously out of it." | -Preliminary Hearing Transcript Vol. 1 at 81,  Exhibit "A" to the Declaration of Elizabeth T. Fitzgerald |
| 26.  The Los Angeles County District Attorney's Office formally filed rape charges against Premjee for having sex with a person who lacked the capacity to consent.  Premjee was arraigned that day. | See Preliminary Hearing Transcript pages attached hereto. |
| 27.  The trial court subsequently dismissed the charge at the end of Premjee's preliminary hearing finding that the prosecution failed to establish penetration had occurred and that there was no evidence of withdrawal of consent by Arshia. | -Preliminary Hearing Transcript Vol. 2 at 306, Exhibit "A" to the Declaration of Elizabeth T. Fitzgerald |

| | |
|---|---|
| 28.  All evidence in the possession of the Detetives was provided to Premjee's criminal defense attorneys prior to the preliminary hearing as required by law.  There were no Brady violations whatsoever. | -Deposition of Deputy District Attorney Lana Kim |
| 29.  The prosecution accepted the outcome of the preliminary hearing but contended that the Court had erroneously applied the incorrect legal standard, focusing its analysis on "consent" rather than "*capacity* to consent." | -Deposition of Deputy District Attorney Lana Kim |

## STATEMENTS OF LAW

1.  Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

2.  The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims or defenses.  Celotex Cop. v. Catrett, 477 U.S. 317, 323-24 (1986).

3.  Premjee was charged with violating Penal Code § 261(a)(3), which provides that: "Rape is an act of sexual intercourse accomplished with a person not the spouse of the

///
///
///

8

1   perpetrator … [w]here a person is prevented from resisting by any intoxicating or
2   anesthetic substance, or any controlled substance, and this condition was known, or
3   reasonably should have been known by the accused."  Constructive knowledge will
4   satisfy the knowledge requirement of § 261(a)(3).  People v. Linwood, 105 Cal.App.4th
5   59, 68-72 (2003).

6       4.  In order to prevail on a false arrest claim, Premjee must demonstrate that no
7   probable cause existed to arrest him.  See Cabrera v. City of Huntington Park, 159 F.3d
8   374, 380 (9th Cir. 1998).  In other words, probable cause is an absolute defense to a
9   claim of false arrest.  See Smith v. Almada, 640 F. 3d 931, 944 (9th Cir. 2011).

10      5.  The purpose of qualified immunity is to "shield an officer from personal liability
11  when an officer reasonably believes that his or her conduct complies with the law."
12  Pearson v. Callahan, 555 U.S. 223, 244 (2009).  With respect to an allegedly unlawful
13  arrest, an officer who makes an arrest without probable cause may still be entitled to
14  qualified immunity if it was "reasonably arguable" that probable cause to arrest existed.
15  See, e.g., Rosenbaum v. Washoe County, 663 F.3d 1071, 1076 (9th Cir. 2011).  The
16  Ninth Circuit has summarized the two prongs of the qualified immunity analysis in the
17  context of an unlawful arrest as: "(1) whether there was probable cause for the arrest;
18  and (2) whether it is reasonably arguable that there was probable cause for arrest—that
19  is, whether reasonable officers could disagree as to the legality of the arrest such that
20  the arresting officer is entitled to qualified immunity."

21      6.  The public entity is not liable for the acts or omissions for which its employee is
22  immune.  See Cal. Gov. Code § 815.2(b)

23      7.  Under California law, false arrest and false imprisonment are not separate torts;
24  "[f]alse arrest is but one way of committing a false imprisonment."  Asgari v. City of
25  L.A., 15 Cal. 4th 744, 753 n. 3 (citation omitted).  "An officer is not liable for false
26  imprisonment for the arrest without a warrant of a person whom he has reasonable
27  grounds to believe is guilty of a crime. The question of the existence of probable cause
28  to believe that one is guilty of a crime must be determined as a matter of law from the

facts and circumstances of the case." <u>Allen v. McCoy</u>, 135 Cal. App. 500, 507 (1933). "The existence of probable cause depends upon facts known by the arresting officer at the time of the arrest." <u>Hamilton v. City of San Diego</u>, 217 Cal. App. 3d 838, 844 (1990).

8. Penal Code § 847(b) contains principles that parallel the immunity analysis. Under § 847(b), officers acting within the scope of their authority are immune from false arrest or false imprisonment claims if the "arrest was lawful, or the peace officer, at the time of the arrest, had reasonable cause to believe the arrest was lawful." Cal. Penal Code § 847(b)(1); see <u>Hamilton</u>, 217 Cal. App. 3d at 845. Reasonable cause to arrest exists when the facts known to the arresting officer would lead a reasonable person to have a strong suspicion of the arrestee's guilt. <u>People v. Mower</u>, 28 Cal.4th 457, 473 (2002). This is an objective standard. <u>People v. Adair</u>, 29 Cal.4th 895, 904–905 (2003).

9. A malicious prosecution claim brought under § 1983 incorporates state law. See <u>Usher</u>, 828 F.3d at 561-62. Under California malicious prosecution law, a plaintiff must prove that the underlying prosecution: "(1) was commenced by or at the direction of the defendant and was pursued to a legal termination in his, plaintiff's, favor; (2) was brought without probable cause; and (3) was initiated with malice." <u>Conrad v. United States</u>, 447 F.3d 760, 767 (9th Cir. 2006) (citation omitted); see also <u>Yousefian v. City of Glendale</u>, 779 F.3d 1010, 1014 (2015) (holding that the absence of probable cause is a necessary element of § 1983 false arrest and malicious prosecution claims).

10. "[I]f the charge is that the victim lacked the capacity to give legal consent … then actual consent is <em>irrelevant</em>[.]" <u>People v. Giardino</u>, 82 Cal.App.4th 454, 461 (2000) (emphasis added).

11. In the case of rape by intoxication, the "issue is not whether the victim actually consented to sexual intercourse, but whether he or she was capable of exercising the degree of judgment a person must have in order to give legally cognizable consent." <u>Id.</u> at 462; see also <u>People v. Dancy</u>, 102 Cal.App.4th 21, 37 (2002) (noting that "neither a woman's actual 'advance consent' nor a man's belief in 'advance consent'" is a defense where the woman later lacks capacity to consent). Section 261(a)(3) does not "require

10

1  the victims to be so intoxicated that they are physically incapable of either speaking or
2  otherwise manifesting a refusal to give actual consent.

3      12.  California Government Code § 821.6 provides that "[a] public employee is
4  not liable for injury caused by his instituting or prosecuting any judicial or
5  administrative proceeding within the scope of his employment, even if he acts
6  maliciously and without probable cause."  Immunity under § 821.6 is limited to
7  malicious prosecution claims.  See Garmon v. Cty. of Los Angeles, 828 F.3d 837, 847
8  (9th Cir. 2016); Mendez v. Cty. of Los Angeles, 897 F.3d 1067, 1083 (9th Cir. 2018).
9  Although § 821.6 is primarily applied to immunize prosecuting attorneys and related
10 personnel, it applies to all employees of government entities.  Kemmerer v. Cnty. of
11 Fresno, 200 Cal.App.3d 1426, 1436, (1988).  As applied to police conduct, § 821.6 is
12 limited to actions taken in the course or as a consequence of an investigation.  See, e.g.,
13 Phillips v. City of Fairfield, 406 F. Supp. 2d 1101, 1118 (E.D. Cal. 2005); Amylou R. v.
14 County of Riverside, 28 Cal.App.4th 1205, 1209-10 (1994) (§ 821.6 immunizes not
15 only the act of filing or prosecuting a judicial or administrative complaint, but also
16 extends to actions taken in preparation for such formal proceedings.)

17     13.  Brady v. Maryland, 373 U.S. 83 (1963) requires both prosecutors and police
18 investigators to disclose exculpatory evidence to criminal defendants.  See Tennison v.
19 City & County of San Francisco, 570 F.3d 1078, 1087 (9th Cir. 2009) (allowing § 1983
20 Brady claim against law enforcement officers).  In order to state a claim under Brady,
21 the plaintiff must allege that (1) the withheld evidence was favorable either because it
22 was exculpatory or could be used to impeach, (2) the evidence was suppressed by the
23 government, and (3) the nondisclosure prejudiced the plaintiff.  Strickler v. Greene, 527
24 U.S. 263, 281-82, (1999).

25     14.  "A government entity may not be held liable under 42 U.S.C. § 1983, unless a
26 policy, practice, or custom of the entity can be shown to be a moving force behind a
27 violation of constitutional rights."  Dougherty v. City of Covina, 654 F.3d 892, 900 (9th
28 Cir. 2011) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978).  In order to

1    establish liability for governmental entities under <u>Monell</u>, a plaintiff must prove (1)

2    that the plaintiff possessed a constitutional right of which he was deprived; (2) that the

3    municipality had a policy; (3) that this policy amounts to deliberate indifference to the

4    plaintiff's constitutional right; and, (4) that the policy is the moving force behind the

5    constitutional violation.  <u>Id</u>.

6         15.  "A plaintiff cannot demonstrate the existence of a municipal policy or custom

7    based solely on a single occurrence of unconstitutional action by a non-policymaking

8    employee."  <u>McDade v. West</u>, 223 F.3d 1135, 1141 (9th Cir. 2000) (citation omitted);

9    see also <u>MacEachern v. City of Manhattan Beach</u>, 623 F. Supp. 2d 1092, 1106 (C.D.

10   Cal. 2009) (collecting cases).

11        16.  Government Code § 815.2(a) provides that: "A public entity is liable for injury

12   proximately caused by an act or omission of an employee of the public entity within the

13   scope of his employment if the act or omission would, apart from this section, have

14   given rise to a cause of action against that employee or his personal representative."

15        17.  The Bane Act civilly protects individuals from conduct aimed at interfering with

16   rights that are secured by federal or state law, where the interference is carried out "by

17   threats, intimidation or coercion."  See <u>Reese v. Cty. of Sacramento</u>, 888 F.3d 1030,

18   1040 (9th Cir. 2018) (citation omitted). Although the Bane Act provides a civil remedy

19   for persons whose exercise of constitutional rights has been interfered with by threats,

20   intimidation or coercion, it does not make actionable otherwise lawful conduct, such as

21   a lawful arrest or detention. See <u>Venegas v. County of Los Angeles</u>, 153 Cal.App.4th

22   1230, 1239-40 & fn. 15, 1247-48 (2007); <u>Ritschel v. City of Fountain Valley</u>, 137

23   Cal.App.4th 107, 123-25 (2006).

24   ///

25   ///

26   ///

27   ///

28   ///

18. In order to recover on an IIED claim, a plaintiff must prove that: (1) the defendant committed extreme and outrageous conduct with the intention of causing, or with the reckless disregard for the probability of causing, emotional distress; (2) the plaintiff suffers from severe or extreme emotional distress; and (3) the defendant's conduct actually and proximately caused the distress. See, e.g., Potter v. Firestone Tire & Rubber Co., 6 Cal.4th 965, 1001 (1993).

Dated: August 2, 2019

Respectfully submitted,

**MICHAEL N. FEUER**. City Attorney
**JAMES P. CLARK**, Supervising/Managing Attorney
**CORY M. BRENTE**, Supervising City Attorney

By: *|S|Elizabeth Fitzgerald*
**ELIZABETH FITZGERALD**
Deputy City Attorney

*Attorneys for Defendants* **CITY OF LOS ANGELES, CHARLIE BECK, OSCAR GAMINO and CARLA ZUNIGA**

13