# EXHIBIT E

(Kim Deposition and Interview Excerpts)

Atkinson-Baker, Inc.
www.depo.com

1 UNITED STATES DISTRICT COURT
2 CENTRAL DISTRICT OF CALIFORNIA
3
4 ARMAAN KARIM PREMJEE,           ) CASE NO:
                                  ) 2:18:-cv-04998-AB-(RAOx)
5         Plaintiff,              )
                                  )
6 Vs.                             )
                                  )
7 CITY OF LOS ANGELES; CHIEF      )
  CHARLIE BECK, DETECTIVE         )
8 OSCAR GAMINO, DETECTIVE         )
  CARLA ZUNIGA, and DOES 1-10,    )
9 inclusive.                      )
                                  )
10        Defendants.             )
                                  )
11
12
13              DEPOSITION OF
14              LANA SUE KIM
15            GLENDALE, CALIFORNIA
16              JULY 19, 2019
17
18
19
20
21
22
23 ATKINSON-BAKER, INC.
   (800) 288-3376
   www.depo.com
24 REPORTED BY:  ALICIA SANTANA, CSR NO. 12824
25 FILE NO.: AD07423

**CERTIFIED COPY**

1

Atkinson-Baker, Inc.
www.depo.com

1   Q.   Okay.  And that was my question.
2        At the time of the filing, did the detectives,
3   either Gamino or Zuniga, tell you that there was video
4   showing Arshia making sexual gestures?
5   A.   No, I don't believe that Detective Gamino, who
6   was the one reviewing the videos, had -- had had the
7   time to look at all of the footage.  So I know that I
8   didn't have the videos at the time, and I know that I
9   did not know about that particular video at the time of
10  filing.
11  Q.   Okay.  And so you became aware of that video and
12  what's depicted in that video because Mr. Braun called
13  it to the attention of your supervisor, and then you
14  reviewed the video thereafter?
15  A.   Yes.
16  Q.   Is that the sequence?
17  A.   Yes.
18  Q.   And that would have been, what, two months
19  into -- after Mr. Premjee was charged with rape?
20  A.   I can tell you more of when it happened before
21  the prelim, and, again, I don't remember when the prelim
22  occurred.
23  Q.   Sure.
24  A.   It would have had to have been about a week
25  before that because every court appearance that we had

Atkinson-Baker, Inc.
www.depo.com

```
 1   filing?
 2       A.  I don't remember.
 3       Q.  And if there was video of that interaction or
 4   that -- if there was video depicting Arshia, wouldn't
 5   that be important for you, as a filing deputy, to look
 6   at to see whether, in fact, Arshia was able to walk on
 7   her own accord or had to be held up or was putting her
 8   hand out or her head on the counter which would go to
 9   the issue of her level of intoxication?
10       A.  In this particular case, even when I did see the
11   video -- and I'm trying to answer your question.  I
12   don't mean to not answer it, but even when I saw the
13   video, it wasn't until after the case had not been held
14   to answer and, therefore, dismissed that I realized that
15   the video itself shows her -- it's not in real time,
16   that it's a little faster than normal than real time.
17           But that, again, was just one of the factors that
18   I considered when I filed the case.  So I guess what I'm
19   trying to tell you is even if I had seen that video at
20   the time of filing, it still would not have changed my
21   decision to file the case.
22       Q.  Okay.  And -- and I appreciate the answer, but
23   that wasn't my question.
24       A.  I'm sorry.
25       Q.  I want to know if at the time that this case was
```

Atkinson-Baker, Inc.
www.depo.com

1  presented to you for filing and the issue being whether
2  Arshia had the capacity to consent, whether video
3  showing her close in time to when the alleged assault
4  occurred, would that be helpful to you in making a
5  determination?
6     A.   In this case, probably not because of what the
7  roommate had seen and what the defendant's text messages
8  said, so I don't believe so.
9     Q.   Okay.  But, generally speaking, video footage
10 showing the alleged victim and alleged assailant just
11 prior to within, let's say, 20 minutes of the actual --
12 of the alleged sexual assault would be important to
13 review; right?
14    A.   Yes.
15    Q.   But you're saying in this case you didn't need to
16 see that, is that right, in order to determine whether
17 you should file the case?
18          MR. FUENTES:  Objection.  Misstates her
19 evidence.
20          Go ahead and answer.
21          THE WITNESS:  I wouldn't say I didn't need
22 to see it, but no, I guess not, not in this case.  I
23 would not have had to seen it to still make that filing
24 decision.
25 BY MS. SARMIENTO:

51

Atkinson-Baker, Inc.
www.depo.com

1    A.    Yes.
2    Q.    Okay.  But it's your opinion that the videos are
3  not exculpatory, so you're saying even if the detectives
4  had them, you wouldn't expect them to give it to you.
5         Is that what you're saying?
6    A.    Because I didn't think they were exculpatory.
7  Just so you know, just because when a case is filed,
8  there is ongoing investigation that's conducted in
9  almost every case.  It's rare to have every piece of
10 evidence when a case is filed, so defense attorneys and
11 prosecutors know that it's an ongoing obligation on both
12 sides.
13        And in this case, even when I had seen the videos
14 that I believe you're saying are exculpatory, they still
15 did not change my mind in terms of proceeding with the
16 case.  Even reviewing the videos, reviewing the videos
17 with my superiors, even during the prelim, I still --
18 and even now I still maintain that I don't believe that
19 they were exculpatory.
20   Q.    What about the witness statements?  Do you
21 believe witness statements that are exculpatory should
22 be given to you at the time of filing if the --
23   A.    Some --
24   Q.    -- detectives have them?
25   A.    If the detective -- if the detectives have them

Atkinson-Baker, Inc.
www.depo.com

1  of mine who deals with -- she's a forensic nurse. Her
2  name is Malinda Wheeler, M-A-L-I-N-D-A W-H-E-E-L-E-R.
3  And I asked her if it was possible for someone to be
4  unconscious and make moaning noises, and she says yes.
5      It's almost like a -- like when you're sleeping,
6  you can make a sound without you knowing it. That it
7  was completely possible or -- and reasonable for someone
8  to make noises when they're unconscious, including
9  moaning noises, so I do want to say that was something
10 that I did follow up on myself.
11     Q. Okay. But if the witnesses -- two witnesses who
12 were present when Ms. -- when Mr. Premjee and Arshia
13 were having sex, heard moaning sounds and they
14 specifically described them to officers as moaning
15 sounds of a man and a woman enjoying sex, is that the
16 infor -- is that the type of information that you would
17 expect the detectives to give you at the time of filing?
18     A. Yes.
19     Q. And did Detectives Gamino and Zuniga tell you
20 that two witnesses heard Arshia and Mr. Premjee making
21 moaning sounds that sounded like a man and a woman
22 enjoying sex?
23     A. I don't know if I knew that at the time of filing
24 or if that's something that I learned after the filing,
25 but in my experience, people can hear something that

Atkinson-Baker, Inc.
www.depo.com

```
 1   like, it -- it's clear that she's not sober in the
 2   video.
 3       Q.   She doesn't appear steady on her feet or. . .
 4       A.   I don't believe so.
 5            MS. SARMIENTO:  Objection; leading.
 6   BY MS. YOUNG:
 7       Q.   Well, how -- how would it appear to you when you
 8   watch the videos?
 9       A.   She didn't appear to be completely steady on her
10   feet, yeah.
11       Q.   And just to confirm, is it -- is it undisputed
12   that everyone had in their possession and had viewed
13   both the Banditos video and the Fluor Tower video by the
14   prelim?
15       A.   Yes.
16       Q.   And how do we know that?
17       A.   Because the defense was the one who presented the
18   videos of the Banditos bar at the time of the
19   preliminary hearing, and in fact, the videos were
20   manipulated so that there were subtitles included in the
21   video.  And the Fluor Tower video was also played during
22   the prelim by the defense.
23       Q.   What do you mean "subtitles"?  They had added
24   what they thought they were saying to each other?
25       A.   They added what they -- it wasn't what they
```

Atkinson-Baker, Inc.
www.depo.com

```
 1          MS. SARMIENTO:  Calls for double hearsay.
 2          THE WITNESS:  I don't remember if he did.
 3  BY MS. YOUNG:
 4     Q.  Okay.  We talked about the video that was both in
 5  your possession and defense counsel's possession prior
 6  to the prelim.
 7     A.  Yes.
 8     Q.  Was there -- on that, kind of, note, in your
 9  experience with these detectives on this case, at any
10  time, did they -- did you feel that they subjected you
11  to any unreasonable pressure to file the case?
12     A.  No.
13     Q.  To your knowledge, did they knowingly withhold
14  any relevant information to you in this case?
15     A.  No.
16     Q.  To your knowledge, did they knowingly supply any
17  false information to you in this case?
18     A.  No.
19     Q.  Okay.  And you were also asked about the -- the
20  preliminary hearing and whether or not the case had met
21  the -- the standard that's applied --
22     A.  Yes.
23     Q.  -- at the prelim.
24         Now, that was obviously the judge's
25  determination?
```

Lana Sue Kim
July 19, 2019

Atkinson-Baker, Inc.
www.depo.com

```
 1  contents of the video.
 2         If you had received the video within 24 hours of
 3  the assault and you had popped that thumb drive into
 4  your computer and had gone through all the hours of
 5  video that you had at your disposal and you had -- you
 6  had -- and you saw that gesture immediately, would that
 7  have changed your filing decision in this case?
 8     A.  Absolutely not.
 9     Q.  Why not?
10     A.  Because, one, consent is not the issue in this
11  case; two, even assuming consent was the issue, the
12  defendant never saw that; three, even assuming that
13  there was consent, consent can always be withdrawn, so
14  even if I had seen that video at the time of filing, I
15  still would have filed this case based on all the other
16  evidence that I had.
17         In addition, I did see that video prior to the
18  preliminary hearing, and I still continued with that
19  hearing even though Mr. Braun's wish was for us to not
20  proceed, and that was clearly conveyed to me by having
21  to have this conversation -- meeting with my superiors.
22  I had to basically give him a little Law 101 when it
23  came to sex crimes, and I proceeded with the case even
24  knowing that sexual gesture had occurred.
25     Q.  And what do you mean you had to give him a little
```

Atkinson-Baker, Inc.
www.depo.com

1  elevator buttons, doing none of that. But, you -- you
2  knew that she had lapsed into unconsciousness almost
3  immediately after the intercourse, would that video have
4  made a difference?
5     A.  In terms of filing the case?
6     Q.  Yeah.
7     A.  No.  I -- I would have still filed the case.
8     Q.  And that -- would that be based on the -- the
9  fact that she had -- she had lapsed into unconsciousness
10 quickly thereafter, or --
11          MS. SARMIENTO:  I'm going to object to
12 the --
13 BY MS. YOUNG:
14    Q.  -- what would that be based on?
15          MS. SARMIENTO:  I'm going to object to the
16 phrasing of the question.  Lacks foundation.  Calls for
17 medical expert opinion.  Calls for speculation.
18          MR. FUENTES:  Go ahead and answer.
19          MS. YOUNG:  Do -- well, I was going to say I
20 could lay a little --
21          MR. FUENTES:  Go ahead and answer.
22 BY MS. YOUNG:
23    Q.  Did witnesses describe approaching Arshia soon
24 after the intercourse?
25    A.  Yes, that -- that video -- assuming that she had

Atkinson-Baker, Inc.
www.depo.com

```
 1  appeared in the video the way you described --
 2       Q.  Uh-huh.
 3       A.  -- in your previous question, that is just one
 4  factor.  There are people that can be completely
 5  drunk -- I'm not saying Arshia -- but there are people
 6  that can be completely intoxicated, so drunk that -- but
 7  they can still function completely normal.
 8           If that was the only evidence I had, I probably
 9  wouldn't have filed the case, but that wasn't the only
10  evidence that I had.  It was, again, all the other
11  factors that I mentioned earlier, so even if I had seen
12  a video of her like that, the way you described --
13       Q.  Which not the case.  That was just a
14  hypothetical.
15       A.  Right.  I still would have filed the case.
16       Q.  Okay.  The -- you went over a little bit, the
17  elements of 261(a)(3).
18           Now, is it required that the defendant know, or
19  is it that he -- it's reasonable?
20       A.  It's reasonable to have known.
21       Q.  Okay.  And is that standard, like, subjective
22  based on what that defendant knew, or is it objective
23  standard?
24       A.  I believe it's subjective.  I -- I could be
25  wrong, but -- it's hold on.  It is -- oh.
```

```
 1      SGT. MARK GRIFFIN:  You mentioned it, and I was just -- I
 2  was just -- this won't go into the summarized --
 3      MS. KIM:  Oh, okay.
 4      SGT. MARK GRIFFIN:  It won't go into the summarized thing.
 5      MS. KIM:  Is this recording?  Is this recording going to
 6  be given to the defense?
 7      SGT. MARK GRIFFIN:  Hold on one sec.  I'll -- let's do
 8  this.  Time off tape will be approximately 09:42 hours.
 9          [INTERVIEW CONCLUDED AT 9:42 A.M.]
10                       ******
11
12  ATTEST:  I do hereby certify that I have truly and correctly
13  transcribed the audio recording of this proceeding in the
14  above-entitled case.
```

Katrina Woyjeck, CSR No. 13603
Certified Shorthand Reporter
For The State Of California

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

ARMAAN KARIM PREMJEE,

            Plaintiff,

vs.

CITY OF LOS ANGELES,

            Defendant.

CASE NO. CV18-04998-AB-(RA0)

**CERTIFIED COPY**

POLICE INTERVIEW OF D.A. LANA KIM

Thursday, February 8, 2018

Transcribed by:

KATRINA WOYJECK
CSR No. 13603

Job No.:
22915CAT-AUDIO



Kennedy
COURT REPORTERS, INC.
920 WEST 17TH STREET
SECOND FLOOR
SANTA ANA, CALIFORNIA
92706

```
 1   to the -- so we talked about the video surveillance footage.
 2   We got that.  Was there any -- was there any issue that he's
 3   bringing up about interviews with material witnesses, these
 4   Uber drivers?
 5        MS. KIM:  No.  I can -- I can tell you that one Uber
 6   driver remembered the incident, and one -- another Uber
 7   driver doesn't remember having -- doesn't remember the
 8   victim and the defendant in his car.
 9        SGT. MARK GRIFFIN:  Mm-hmm.
10        MS. KIM:  As far as the Facebook messages, that's
11   explained in the report where she was looking for her phone,
12   I believe.  And I should also let you know all this evidence
13   that they're claiming is quote/unquote proves his innocence,
14   that's a -- a fact to be determined by a court.
15            And I reviewed this evidence including the, you
16   know, the sexual gesture an hour and a half before, and the
17   way she walked into the -- the -- the -- her dorm room, and
18   I still would have proceeded with the case.  I mean, I still
19   did proceed with the case --
20        SGT. MARK GRIFFIN:  Mm-hmm.
21        MS. KIM:  -- even knowing all of that and knowing about
22   the Facebook messages.  And I disagree with the judge's
23   ruling.  That's what it comes down to.
24        SGT. MARK GRIFFIN:  Mm-hmm.
25        MS. KIM:  And I've noticed Mr. Brond, you know, he's
```

1  SGT. MARK GRIFFIN: You mentioned it, and I was just -- I
2  was just -- this won't go into the summarized --
3  MS. KIM: Oh, okay.
4  SGT. MARK GRIFFIN: It won't go into the summarized thing.
5  MS. KIM: Is this recording? Is this recording going to
6  be given to the defense?
7  SGT. MARK GRIFFIN: Hold on one sec. I'll -- let's do
8  this. Time off tape will be approximately 09:42 hours.
9  [INTERVIEW CONCLUDED AT 9:42 A.M.]
10 ******
11
12 ATTEST: I do hereby certify that I have truly and correctly
13 transcribed the audio recording of this proceeding in the
14 above-entitled case.
15
16
17       *Katrina Woyjeck* (signature)
       Katrina Woyjeck, CSR No. 13603
       Certified Shorthand Reporter
18       For The State Of California
19
20
21
22
23
24
25