**MICHAEL N. FEUER,** City Attorney (SBN 111529x)
**JAMES P. CLARK**, Supervising/Managing Attorney (64780)
**CORY M. BRENTE,** Supervising Assistant City Attorney (SBN 115453)
**ELIZABETH FITZGERALD,** Deputy City Attorney (SBN 158917)
**REBEKAH W. YOUNG**, Deputy City Attorney (SBN 214859)
200 N. Main Street, 6th Floor, City Hall East
Los Angeles, California 90012
Phone: (213) 978-7560 / Fax: (213) 978-8785
Email: elizabeth.fitzgerald@lacity.org
Email: rebekah.young@lacity.org

*Attorneys for Defendants* **CITY OF LOS ANGELES**, **CHARLIE BECK**, **OSCAR GAMINO and CARLA ZUNIGA**

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARMAAN KARIM PREMJEE,<br><br>　　　　　Plaintiffs,<br><br>　vs.<br><br>CITY OF LOS ANGELES, CHIEF CHARLIE BECK, DETECTIVE OSCAR GAMINO, and DETECTIVE CARLA ZUNIGA,<br><br>　　　　　Defendants. | **Case No. CV18-04998 AB (ROA)**<br>*Hon Judge: Andre Birotte, Jr.; Crtm 7B*<br>*Hon Magistrate Judge: Rozella A. Oliver*<br><br>**DEFENDANTS' STATEMENT OF UNCONTROVERTED FACTS AND LAW**<br><br>[Filed concurrently with Defendants' Notice of Motion and Motion for Summary Judgment; Declaration of Oscar Gamino; Declaration of Elizabeth T. Fitzgerald; Exhibits; and Proposed Order]<br><br>Date: September 13, 2019<br>Time: 9:00 a.m.<br>Court: 7B, 350 W. 1st Street |

| Statement of Uncontroverted Facts | Defendants' Evidence |
|---|---|
| UF #1—On Friday March 31, 2017, an intoxicated USC student (Arshia) went to a bar called Banditos and consumed shots of alcohol. | 4/12/17 Police Report at 1. (Dkt. No. 29-5—Attached as Exhibit B to Declaration of Elizabeth T. Fitzgerald at ¶ 3.) |
| UF #2—The next morning, Arshia woke up in a hospital room with two detectives from LAPD's Special Assault Section by her side and no memory of anything that had happened after she had gone to the Bandito's Bar the prior night except that she was feeling suffocated and unable to breathe. | 4/12/17 Report at 1-2. (Dkt. No. 29-5—Attached as Exhibit "B" to Declaration of Elizabeth T. Fitzgerald at ¶ 3.) |
| UF #3—Arshia, who had a .32 blood alcohol content when admitted to California Hospital, was treated for alcohol poisoning. | 4/12/17 Police Report at 1. (Dkt. No. 29-5—Attached as Exhibit "B" to Declaration of Elizabeth T. Fitzgerald at ¶ 3.) |
| UF #4—Arshia learned that she had left the bar with a fellow USC student, Plaintiff Armaan Premjee (Premjee) and had accompanied him to his fraternity house. | 4/12/17 Police Report at 2. (Dkt. No. 29-5—Attached as Exhibit "B" to Declaration of Elizabeth T. Fitzgerald at ¶ 3.) |

2

| Statement of Uncontroverted Facts | Defendants' Evidence |
|---|---|
| | Preliminary Hearing Transcript Vol. 1 at 21-22. (Dkt. 29-4—Attached as Exhibit "A" to Declaration of Elizabeth T. Fitzgerald at ¶ 2.) |
| UF #5—Arshia also learned, when viewing a video of her outside of Bandito's that she had made a sign with her hands indicating that she intended to have sex with Premjee; however, when shown the video she did not recall having made the gesture. | 7/19/17 Police Report at 1. (Dkt. No. 29-5—Attached as Exhibit "B" to Declaration of Elizabeth T. Fitzgerald at ¶ 3.)<br><br>Preliminary Hearing Transcript Vol. 1 at 72, 75. (Dkt. 29-4—Attached as Exhibit "A" to Declaration of Elizabeth T. Fitzgerald at ¶ 2.) |
| UF #6—Premjee's fraternity brothers, Austin Ridgeway and Frank Aimetti, observed that Arshia was extremely intoxicated and told Premjee to put Arshia in an Uber and send her home. | Preliminary Hearing Transcript Vol. 1 at 21-24; 35-40. (Dkt. 29-4—Attached as Exhibit "A" to Declaration of Elizabeth T. Fitzgerald at ¶ 2.) |
| UF #7—Premjee told his fraternity brothers that he was going to have Arshia sleep it off in his room, but the fraternity brothers objected and demanded that Premjee call an Uber. | Preliminary Hearing Transcript Vol. 1 at 24-25, 40. (Dkt. 29-4—Attached as Exhibit "A" to Declaration of Elizabeth T. Fitzgerald at ¶ 2.) |
| UF #8—According to the fraternity brothers, rather than place Arshia in an Uber, Premjee tried to bring Arshia into his room. | Preliminary Transcript Vol. 1 at 23-25; 40. (Dkt. 29-4—Attached as Exhibit "A" to Declaration of Elizabeth T. Fitzgerald at ¶ 2.) |

3

| Statement of Uncontroverted Facts | Defendants' Evidence |
|---|---|
| UF #9—The fraternity brothers again demanded that Premjee call an Uber for Arshia and, this time, watched as he called for an Uber. | Preliminary Transcript Vol. 1 at 25, 40. (Dkt. 29-4—Attached as Exhibit "A" to Declaration of Elizabeth T. Fitzgerald at ¶ 2.) |
| UF #10—Austin Ridgeway told Premjee not to get into the Uber and that if he did get into the Uber, he had to come back that night. | 4/12/17 Police Report at 7. (Dkt. No. 29-5—Attached as Exhibit "B" to Declaration of Elizabeth T. Fitzgerald at ¶ 3.) |
| UF #11—At Arshia's USC on-campus dorm (Fluor Tower), Arshia signed Premjee in as her guest and was visibly swaying as she and Premjee made their way to the elevator. | 4/12/17 Police Report at 2. (Dkt. No. 29-5—Attached as Exhibit "B" to Declaration of Elizabeth T. Fitzgerald at ¶ 3.)<br><br>Preliminary Hearing Transcript Vol. 2 at 230. (Dkt. 29-4—Attached as Exhibit "A" to Declaration of Elizabeth T. Fitzgerald at ¶ 2.) |
| UF #12—Premjee went with Arshia to her dorm floor and the two had sex in the common area of Arshia's dorm. | Deposition of Detective Oscar Gamino at 69. (Dkt. 29-6—Attached as Exhibit "C" to the Declaration of Elizabeth T. Fitzgerald at ¶ 4.) |
| UF #13—When Arshia's dormmates approached almost immediately after the sex was over, Arshia has lapsed into unconscious. | 4/1/17 Police Report at 3 and 4/12/17 Police Report at 6. (Dkt. No. 29-5—Attached as Exhibit "B" to Declaration of Elizabeth T. Fitzgerald at ¶ 3.) |

| Statement of Uncontroverted Facts | Defendants' Evidence |
|---|---|
| UF #14—Premjee then went into the bathroom, half clothed and used the restroom. | 4/12/17 Police Report at 3. (Dkt. No. 29-5—Attached as Exhibit "B" to Declaration of Elizabeth T. Fitzgerald at ¶ 3.) |
| UF #15—Arshia's roommates discovered Premjee having sex with Arshia and spoke angrily to him. | Preliminary Hearing Transcript Vol. 1 at 57-60. (Dkt. 29-4—Attached as Exhibit "A" to Declaration of Elizabeth T. Fitzgerald at ¶ 2.)<br><br>4/12/17 Police Report at 6. (Dkt. No. 29-5—Attached as Exhibit "B" to Declaration of Elizabeth T. Fitzgerald at ¶ 3.) |
| UF #16—Arshia's roommates were unable to wake her and an ambulance was called. | Preliminary Hearing Transcript Vol. 1 at 62. (Dkt. 29-4—Attached as Exhibit "A" to Declaration of Elizabeth T. Fitzgerald at ¶ 2.)<br><br>4/12/17 Report at 2-3. (Dkt. No. 29-5—Attached as Exhibit "B" to Declaration of Elizabeth T. Fitzgerald at ¶ 3.) |
| UF #17—Premjee sent a text message to a friend as soon as he left the dorm room, asking whether his actions qualified as a sexual assault. | 4/12/17 Police Report at 4-5. (Dkt. No. 29-5—Attached as Exhibit "B" to Declaration of Elizabeth T. Fitzgerald at ¶ 3.) |
| UF #18—"Bro I fucked up," Premjee's text message began. "Or at least I think I did." | 4/12/17 Police Report at 4. (Dkt. No. 29-5—Attached as Exhibit "B" to Declaration of Elizabeth T. Fitzgerald at ¶ 3.) |

| **Statement of Uncontroverted Facts** | **Defendants' Evidence** |
|---|---|
| UF #19—In the text message. Premjee admitted that Arshia was "blackout drunk" when she met him and was "still blackout drunk" when they had sex. | 4/12/17 Report at 4. (Dkt. No. 29-5—Attached as Exhibit "B" to Declaration of Elizabeth T. Fitzgerald at ¶ 3.) |
| UF #20—"She could not walk straight" Premjee said in the text message. | 4/12/17 Report at 4. (Dkt. No. 29-5—Attached as Exhibit "B" to Declaration of Elizabeth T. Fitzgerald at ¶ 3.) |
| UF #21—"Even during sex" he added, "she was sloppy and all over the place." | 4/12/17 Report at 4. (Dkt. No. 29-5—Attached as Exhibit "B" to Declaration of Elizabeth T. Fitzgerald at ¶ 3.) |
| UF #22—Premjee also admitted that he had lied to Arshia's dormmates, telling them that he was also extremely drunk, like Arshia, when in fact he was only "mildly drunk." | 4/12/17 Report at 5. (Dkt. No. 29-5—Attached as Exhibit "B" to Declaration of Elizabeth T. Fitzgerald at ¶ 3.) |
| UF #23—Premjee's friend responded: "Technically, it's wrong, as her decision making would be hazed." | 4/12/17 Report at 5. (Dkt. No. 29-5—Attached as Exhibit "B" to Declaration of Elizabeth T. Fitzgerald at ¶ 3.) |
| UF #24—The friend also advised Premjee to "[m]aintain that you were as drunk as her if not worse. That way, you cannot be blamed." | 4/12/17 Report at 5. (Dkt. No. 29-5—Attached as Exhibit "B" to Declaration of Elizabeth T. Fitzgerald at ¶ 3.) |
| UF #25—On April 1, 2017, Arshia sent Premjee the following message: "Hey dude … I was told that I was with you Friday night. I was also told that we | Preliminary Hearing Transcript Vol. 1 at 80-81. (Dkt. 29-4—Attached as Exhibit "A" to Declaration of Elizabeth T. Fitzgerald at ¶ 2.) |

| Statement of Uncontroverted Facts | Defendants' Evidence |
|---|---|
| fucked. I do not remember because I was very out of it. Obviously out of it." | |
| UF #26—On May 2, 2017, the Los Angeles County District Attorney's Office formally filed rape charges against Premjee for having sex with a person who lacked the capacity to consent. | 5/16/17 Police Report at 1. (Dkt. No. 29-5—Attached as Exhibit "B" to Declaration of Elizabeth T. Fitzgerald at ¶ 3.) |
| UF #27—The trial court subsequently dismissed the charge at the end of Premjee's preliminary hearing finding that the prosecution failed to establish penetration had occurred and that there was no evidence of withdrawal of consent by Arshia. | Preliminary Hearing Transcript Vol. 2 at 306. (Dkt. 29-4—Attached as Exhibit "A" to Declaration of Elizabeth T. Fitzgerald at ¶ 2.) |
| UF #28—The prosecutor and Premjee's criminal attorney had both received and viewed the Fluor Tower and Banditos bar videos by the July 24, 2017 preliminary hearing. | Deposition of Deputy District Attorney Lana Kim Depo at 46, 106. (Dkt. 29-8—Attached as Exhibit "E" to Declaration of Elizabeth T. Fitzgerald at ¶ 2.) |
| UF #29—The prosecution believed that the trial court erroneously applied the incorrect legal standard, focusing its analysis on consent, which is not at issue in Penal Code § 261(a)(3) charges. | Deposition of Deputy District Attorney Lana Kim Depo at 116. (Dkt. 29-8—Attached as Exhibit "E" to Declaration of Elizabeth T. Fitzgerald at ¶ 2.) |

# STATEMENTS OF LAW

1. Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

2. The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims or defenses. Celotex Cop. v. Catrett, 477 U.S. 317, 323-24 (1986).

3. Premjee was charged with violating Penal Code § 261(a)(3), which provides that: "Rape is an act of sexual intercourse accomplished with a person not the spouse of the perpetrator … [w]here a person is prevented from resisting by any intoxicating or anesthetic substance, or any controlled substance, and this condition was known, or reasonably should have been known by the accused." Constructive knowledge will satisfy the knowledge requirement of § 261(a)(3). People v. Linwood, 105 Cal.App.4th 59, 68-72 (2003).

4. In order to prevail on a false arrest claim, Premjee must demonstrate that no probable cause existed to arrest him. See Cabrera v. City of Huntington Park, 159 F.3d 374, 380 (9th Cir. 1998). In other words, probable cause is an absolute defense to a claim of false arrest. See Smith v. Almada, 640 F. 3d 931, 944 (9th Cir. 2011).

5. The purpose of qualified immunity is to "shield an officer from personal liability when an officer reasonably believes that his or her conduct complies with the law." Pearson v. Callahan, 555 U.S. 223, 244 (2009). With respect to an allegedly unlawful arrest, an officer who makes an arrest without probable cause may still be entitled to qualified immunity if it was "reasonably arguable" that probable cause to arrest existed. See, e.g., Rosenbaum v. Washoe County, 663 F.3d 1071, 1076 (9th Cir. 2011). The Ninth Circuit has summarized the two prongs of the qualified immunity analysis in the context of an unlawful arrest as: "(1) whether there was probable cause for the arrest; and (2) whether it is reasonably arguable that there was probable cause for arrest—that is, whether reasonable officers could disagree as to the legality of the arrest such that the arresting officer is entitled to qualified immunity."

8

6. The public entity is not liable for the acts or omissions for which its employee is immune. See Cal. Gov. Code § 815.2(b)

7. Under California law, false arrest and false imprisonment are not separate torts; "[f]alse arrest is but one way of committing a false imprisonment." Asgari v. City of L.A., 15 Cal. 4th 744, 753 n. 3 (citation omitted). "An officer is not liable for false imprisonment for the arrest without a warrant of a person whom he has reasonable grounds to believe is guilty of a crime. The question of the existence of probable cause to believe that one is guilty of a crime must be determined as a matter of law from the facts and circumstances of the case." Allen v. McCoy, 135 Cal. App. 500, 507 (1933). "The existence of probable cause depends upon facts known by the arresting officer at the time of the arrest." Hamilton v. City of San Diego, 217 Cal. App. 3d 838, 844 (1990).

8. Penal Code § 847(b) contains principles that parallel the immunity analysis. Under § 847(b), officers acting within the scope of their authority are immune from false arrest or false imprisonment claims if the "arrest was lawful, or the peace officer, at the time of the arrest, had reasonable cause to believe the arrest was lawful." Cal. Penal Code § 847(b)(1); see Hamilton, 217 Cal. App. 3d at 845. Reasonable cause to arrest exists when the facts known to the arresting officer would lead a reasonable person to have a strong suspicion of the arrestee's guilt. People v. Mower, 28 Cal.4th 457, 473 (2002). This is an objective standard. People v. Adair, 29 Cal.4th 895, 904–905 (2003).

9. A malicious prosecution claim brought under § 1983 incorporates state law. See Usher, 828 F.3d at 561-62. Under California malicious prosecution law, a plaintiff must prove that the underlying prosecution: "(1) was commenced by or at the direction of the defendant and was pursued to a legal termination in his, plaintiff's, favor; (2) was brought without probable cause; and (3) was initiated with malice." Conrad v. United States, 447 F.3d 760, 767 (9th Cir. 2006) (citation omitted); see also Yousefian v. City of Glendale, 779 F.3d 1010, 1014 (2015) (holding that the absence of probable cause is a necessary element of § 1983 false arrest and malicious prosecution claims).

10. "[I]f the charge is that the victim lacked the capacity to give legal consent … then actual consent is *irrelevant*[.]" People v. Giardino, 82 Cal.App.4th 454, 461 (2000) (emphasis added).

11. In the case of rape by intoxication, the "issue is not whether the victim actually consented to sexual intercourse, but whether he or she was capable of exercising the degree of judgment a person must have in order to give legally cognizable consent." Id. at 462; see also People v. Dancy, 102 Cal.App.4th 21, 37 (2002) (noting that "neither a woman's actual 'advance consent' nor a man's belief in 'advance consent'" is a defense where the woman later lacks capacity to consent). Section 261(a)(3) does not "require the victims to be so intoxicated that they are physically incapable of either speaking or otherwise manifesting a refusal to give actual consent.

12. California Government Code § 821.6 provides that "[a] public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause." Immunity under § 821.6 is limited to malicious prosecution claims. See Garmon v. Cty. of Los Angeles, 828 F.3d 837, 847 (9th Cir. 2016); Mendez v. Cty. of Los Angeles, 897 F.3d 1067, 1083 (9th Cir. 2018). Although § 821.6 is primarily applied to immunize prosecuting attorneys and related personnel, it applies to all employees of government entities. Kemmerer v. Cnty. of Fresno, 200 Cal.App.3d 1426, 1436, (1988). As applied to police conduct, § 821.6 is limited to actions taken in the course or as a consequence of an investigation. See, e.g., Phillips v. City of Fairfield, 406 F. Supp. 2d 1101, 1118 (E.D. Cal. 2005); Amylou R. v. County of Riverside, 28 Cal.App.4th 1205, 1209-10 (1994) (§ 821.6 immunizes not only the act of filing or prosecuting a judicial or administrative complaint, but also extends to actions taken in preparation for such formal proceedings.)

13. Brady v. Maryland, 373 U.S. 83 (1963) requires both prosecutors and police investigators to disclose exculpatory evidence to criminal defendants. See Tennison v.

City & County of San Francisco, 570 F.3d 1078, 1087 (9th Cir. 2009) (allowing § 1983 Brady claim against law enforcement officers). In order to state a claim under Brady, the plaintiff must allege that (1) the withheld evidence was favorable either because it was exculpatory or could be used to impeach, (2) the evidence was suppressed by the government, and (3) the nondisclosure prejudiced the plaintiff. Strickler v. Greene, 527 U.S. 263, 281-82, (1999).

14. "A government entity may not be held liable under 42 U.S.C. § 1983, unless a policy, practice, or custom of the entity can be shown to be a moving force behind a violation of constitutional rights." Dougherty v. City of Covina, 654 F.3d 892, 900 (9th Cir. 2011) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978). In order to establish liability for governmental entities under Monell, a plaintiff must prove (1) that the plaintiff possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy is the moving force behind the constitutional violation. Id.

15. "A plaintiff cannot demonstrate the existence of a municipal policy or custom based solely on a single occurrence of unconstitutional action by a non-policymaking employee." McDade v. West, 223 F.3d 1135, 1141 (9th Cir. 2000) (citation omitted); see also MacEachern v. City of Manhattan Beach, 623 F. Supp. 2d 1092, 1106 (C.D. Cal. 2009) (collecting cases).

16. Government Code § 815.2(a) provides that: "A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative."

17. The Bane Act civilly protects individuals from conduct aimed at interfering with rights that are secured by federal or state law, where the interference is carried out "by threats, intimidation or coercion." See Reese v. Cty. of Sacramento, 888 F.3d 1030,

11

1040 (9th Cir. 2018) (citation omitted). Although the Bane Act provides a civil remedy for persons whose exercise of constitutional rights has been interfered with by threats, intimidation or coercion, it does not make actionable otherwise lawful conduct, such as a lawful arrest or detention.  See Venegas v. County of Los Angeles, 153 Cal.App.4th 1230, 1239-40 & fn. 15, 1247-48 (2007); Ritschel v. City of Fountain Valley, 137 Cal.App.4th 107, 123-25 (2006).

18.  In order to recover on an IIED claim, a plaintiff must prove that: (1) the defendant committed extreme and outrageous conduct with the intention of causing, or with the reckless disregard for the probability of causing, emotional distress; (2) the plaintiff suffers from severe or extreme emotional distress; and (3) the defendant's conduct actually and proximately caused the distress.  See, e.g., Potter v. Firestone Tire & Rubber Co., 6 Cal.4th 965, 1001 (1993).

Dated: August 5, 2019

                Respectfully submitted,

                **MICHAEL N. FEUER**, City Attorney
                **JAMES P. CLARK**, Supervising/Managing Attorney
                **CORY M. BRENTE**, Supervising City Attorney

                By: /S/Elizabeth Fitzgerald
                    **ELIZABETH FITZGERALD**
                    Deputy City Attorney

                *Attorneys for Defendants* **CITY OF LOS ANGELES, CHARLIE BECK, OSCAR GAMINO and CARLA ZUNIGA**