LAW OFFICES OF VICKI I. SARMIENTO
A Professional Corporation
VICKI I. SARMIENTO, SBN 134047
333 North Garfield Avenue
Alhambra, California  91801
vsarmiento@vis-law.com
Telephone:  (626) 308-1171
Facsimile  : (626) 308-1101

LAW OFFICES OF DALE K. GALIPO
DALE K. GALIPO, SBN 144074
21800 Burbank Boulevard, Suite 310
Woodland Hills, CA 91367
dalekgalipo@yahoo.com
Telephone:  (818) 347-3333
Facsimile:   (818) 347-4118

*Attorneys for Plaintiff*, ARMAAN K. PREMJEE

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ARMAAN KARIM PREMJEE,<br><br>         Plaintiff,<br><br>vs.<br><br>CITY OF LOS ANGELES; CHIEF CHARLIE BECK, DETECTIVE OSCAR GAMINO, DETECTIVE CARLA ZUNIGA, and DOES 1-10, inclusive.<br><br>         Defendants. | Case No.: 2:18-cv-04998-AB-(RAOx)<br><br>*The Honorable Andre Birotte, Jr.*<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION IN LIMINE NO. 1 TO EXCLUDE EVIDENCE OF ADMINISTRATIVE PROCEEDING CONDUCTED BY USC TITLE IX OFFICE**<br><br>**Pretrial Conf.: November 8, 2019**<br>**Trial Date     : December 3, 2019** |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD**:

PLEASE TAKE NOTICE that on November 8, 2019, at 11:00 am or as soon

thereafter as this matter may be heard in Courtroom 7B of the above-entitled Court,

Plaintiff will and hereby moves the Court by way of this Motion *in Limine* No. 1 to exclude any reference to the USC Title IX investigation of the sexual encounter between Mr. Premjee and Arshia, including that the investigation even occurred, all interviews, findings, and conclusions.  Plaintiff makes this motion under Federal Rules of Evidence, Rules 401 and 402, on the grounds that this information is irrelevant.  Plaintiff further make this motion under Rule 403 on the grounds that this evidence will unduly prejudice Plaintiff, unduly consume this Court's time, and will confuse the issues.  Finally, Plaintiffs also make this motion under Rules 801, 802, on the grounds that it constitutes improper hearsay.

**Statement of Local Rule 7-3 Compliance**:  This motion is made following a "meet and confer" on this motion.  During the meet and confer on motions in limine, Plaintiff's counsel informed defense counsel that Plaintiff will <u>not</u> be seeking any damages related to the Title IX proceedings.  This Motion is based on this Notice of Motion, the Memorandum of Points and Authorities, the records and files of this Court, and upon such other oral and documentary evidence as may be presented at the time of the hearing.

Dated:  October 18, 2019

LAW OFFICES OF VICKI I. SARMIENTO
LAW OFFICES OF DALE K. GALIPO

By: /s/   *Vicki I. Sarmiento*
Vicki I. Sarmiento
*Attorneys for Plaintiff*

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

This is a civil rights case regarding Mr. Premjee's wrongful arrest and prosecution for rape.  Mr. Premjee, a U.S.C. student at the time, was initially arrested for rape of an unconscious woman under Penal Code § 261(a)(4), and his arrest charge was later changed to rape of a person too intoxicated to give legal consent under Penal Code § 261(a)(3)[1].  Mr. Premjee was not guilty under any Penal Code section because and he did not rape Arshia.  Mr. Premjee's arrests were the result of Detectives GAMINO and ZUNIGA's reckless disregard for his innocence.  No reasonable detective would have arrested Mr. Premjee without conducting a thorough investigation and without reviewing the available evidence and information pointing to Mr. Premjee's innocence.  Moreover, no detective would have engaged in suggestive witness interviews with the goal of having the witnesses recant and/or question their original statements which were favorable to Mr. Premjee and were exculpatory.

Even after the criminal charges against Mr. Premjee were dismissed by Judge Pastor after a four-day preliminary hearing, Det. ZUNIGA prepared a false affidavit to obtain a search warrant to retrieve all of U.S.C.'s Title IX investigation file which included interviews of witnesses and findings and conclusions which led to Mr. Premjee's expulsion from U.S.C.  The expulsion was later withdrawn by U.S.C. and Mr. Premjee was able to complete the courses he needed to graduate.  However, U.S.C. re-opened the investigation and it is currently pending.  Defendants have never turned

---

[1] Mr. Premjee was also charged with violating Penal Code §289 (penetration by foreign object).  This charge was dismissed by the prosecutor prior to the start of the preliminary hearing.

over the documents they received from U.S.C. pursuant to their search warrants despite repeated requests for production of the entire U.S.C. file.

## II. BRIEF STATEMENT OF UNDERLYING FACTS

Around midnight of April 1, 2017, Mr. Premjee met Arshia at a bar called Banditos located near the U.S.C. campus where they were both students. Arshia initiated the contact with Mr. Premjee. They discovered they were both from the same town in Mumbai, India. Arshia was very aggressive and within minutes of their meeting she began kissing his neck. After making out at the bar they decided to leave Banditos to have consensual sex. Their interactions inside and outside of Banditos was captured on surveillance videos. Prior to leaving with Mr. Premjee in an Uber, the Banditos video shows Arshia making a universal sexual sign to her friend Kavya Nayar using one hand to form a circle and the index finger from her other hand inserting it in and out of the circle, in a clear signaling that she was leaving to have sex with Mr. Premjee. Within approximately half-hour of leaving Banditos, around 1:04 a.m., Arshia checked-in Mr. Premjee as her guest at Fluor Tower where she lived. Witness Ronniecia Stringfellow, who worked at Fluor Tower checked them in. Ms. Stringfellow described them as a "happy couple" and described that she had a pleasant conversation with Arshia and Mr. Premjee. She also described that Arshia was "flirting" with Mr. Premjee. Their interactions at the check-in counter of Fluor Tower were also captured on video. Mr. Premjee left Arshia's dormitory around 1:28 a.m. after their consensual sexual intercourse. About an hour later, one of the roommates called an ambulance because they could not wake Arshia. She had tried to get up a couple of times on her own, but fell back onto the air mattress. Arshia was transported to a hospital where she arrived at almost 3:00 a.m. A sample of Arshia's blood was apparently taken close to 4:00 a.m. and according to GAMINO, he learned from "nurse staff that the victim's BAC level was over .3, possibly .325 or .328."

Importantly, neither Detectives GAMINO or ZUNIGA were interested in what the videos showed (which they obtained as early as April 5) because the videos did not support their conclusion that Arshia had been raped—although Arshia did not view herself as rape victim (and to this day does not believe she was raped—instead, she claimed to have no memory of the events).  Nor did they bring the existence of the videos to DDA Kim's attention before Mr. Premjee was re-arrested on April 11 and charges formally filed on May 2.  Even after viewing the videos, they did not write any formal report describing Arshia's sexual gesture or her flirtatious interactions with Mr. Premjee all the way up to getting in the elevator to go to her room.  The Detectives based their conclusion of rape on the BAC taken 2 ½ hours after the sexual intercourse between Mr. Premjee and Arshia, and their erroneous conclusion of an "admission" drawn from text messages between Mr. Premjee and his friend Harsh Godwani.

Plaintiff contends that Dets. GAMINO and ZUNIGA made up their minds on April 1st that Mr. Premjee was guilty of rape, and thereafter sought to ignore and suppress any evidence that would contradict their theory, and they sought to undermine the witness interviews taken by the original officers, Officer Meraz and Zamora which negated probable cause to arrest Mr. Premjee for rape.

This Motion *in Limine* is based on several grounds.  First, this evidence is irrelevant pursuant to Federal Rules of Evidence, Rule 402, because it is immaterial to the issues to be decided by the jury in the instant case.  Second, the evidence usurps the jury's role, and should be excluded under Federal Rules of Evidence, Rule 403, on the grounds that this evidence would confuse the issues, mislead the jury, cause undue delay, and waste this Court's time.  Further, such evidence would be unduly prejudicial to Plaintiffs under Rule 403, and such prejudicial effect would greatly outweigh any possible probative value of this evidence.  Third, this Motion is also made on the

grounds that the U.S.C. Title IX investigative findings and conclusions are hearsay for which there is no exception under Federal Rules of Evidence, Rules 801 and 802.

### III. EVIDENCE OF ANY AGENCY'S FINDINGS AND/OR CONCLUSIONS IS IRRELEVANT AND SHOULD BE EXCLUDED UNDER FEDERAL RULES OF EVIDENCE, RULE 402.

Rule 401 of the Federal Rules of Evidence defines relevant evidence as evidence that "(a) … has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Rule 402 provides that relevant evidence is generally admissible, but irrelevant evidence is not. It is important to note that here, the original expulsion of Mr. Premjee based on U.S.C.'s first Title IX investigation was withdrawn because the California Court of Appeal found in another case that the process by which U.S.C.'s Title IX office conducted its sexual assault investigations was unconstitutional and violated the due process rights of the accused student.[2] Among other things, the accused could not confront his accuser, was not allowed to cross-examine witnesses, and the finder of fact was a U.S.C. employee and not neutral and unbiased. The files underlying the first investigation are the ones Defendants obtained by the false search warrant affidavit and they should be excluded as irrelevant because the proceedings and the conclusions were tainted by the unconstitutionality of the U.S.C. investigation process. The fact of the existence of the first Title IX investigation must be excluded as irrelevant.

Any reference or evidence of the second investigation which is still pending are also irrelevant. There is little probative value in U.S.C.'s Title IX administrative investigation files, reports, and proceedings, specifically in their conclusory statements regarding the complaint information and agency's analysis. First, they have a different

---

[2] Mr. Premjee's expulsion appeal was pending when the expulsion was withdrawn.

4

standard, a lower standard, by which they measure whether the conduct of an accused student merits any disciplinary action. Second, any statements from witnesses are not under oath and unreliable. Third, Defendants have not turned over what they obtained from Title IX via their search warrants and/or subpoenas despite Plaintiff's request for production.

Even if the Title IX proceedings have some marginal relevance, the prejudicial effect of such proceedings, files, reports, findings/conclusions would greatly outweigh any probative value they may have as explained below.

### IV. EVIDENCE OF TITLE IX ADMINISTRATIVE FINDINGS AND CONCLUSIONS, OR THAT AN INVESTIGATION OCCURRED IS UNDULY PREJUDICIAL AND SHOULD BE EXCLUDED UNDER FEDERAL RULES OF EVIDENCE 403.

Federal Rule of Evidence 403 provides for exclusion of even relevant evidence on various grounds as follows: The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following – unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. The Title IX proceedings, findings, and conclusions are highly prejudicial because they pose a significant risk of confusing the jury, cause undue delay and waste of time, and are cumulative. The danger presented by these administrative "findings" and "conclusions" is that they usurp the jury's role to independently weigh the evidence and reach its own conclusion based on the facts and the law. The jury should decide the case based on its own evaluation of the evidence presented, and not based on what another entity or body decided and where the burden of proof is substantially lower. It will necessarily devolve into a mini-trial on the issues in and the reliability of the findings and conclusions in the administrative proceedings. Admission of the administrative conclusions and findings may improperly lead the jurors to believe that determinations have already been made, and that they need not

make an independent determination based on the evidence related to the issues presented to them.

To the extent that Defendants seek to use statements obtained by Title IX during their investigation either from Plaintiff or other witnesses under the guise of impeachment, any such statements were not made under oath and the entire first Title IX investigation was withdrawn by USC because they did not adhere to due process safeguards. Therefore, those statements are tainted and unreliable.

The danger presented by admitting any statement, finding or conclusion obtained by Title IX investigators is highly prejudicial to Plaintiff. Determining the Detectives' liability, if any, is for the jury to decide based on the witnesses, evidence and law given in this case, not from an administrative proceeding. There is a significant risk that the jury might give undue deference to the findings of U.S.C.'s Title IX office, as well as the conclusions it reached in the original investigation or the pending investigation. As stated above, the first investigation led to Mr. Premjee's expulsion (later withdrawn), and made conclusory findings on the state of the evidence they gathered, and ultimately found that Mr. Premjee violated the code of conduct of the school. The jury might be tempted to disregard the testimony of eyewitnesses, the physical and video evidence, the law and the jury instructions, and instead decide that the actions of the detectives GAMINO and ZUNIGA were justified simply because an authority figure already determined that Mr. Premjee did something wrong. The jury might feel bound to abide by the conclusions and/or findings of the Title IX office rather than reaching its own independent conclusions based on all of the evidence.

Moreover, the Title IX office makes findings based on the lowest of standards, violation of the school's code of conduct, and relies on unsworn statements. Informing the jury that Mr. Premjee was investigated by his university's Title IX office, expelled, then re-instated, then investigated again will likely (and improperly) persuade the jury

PLAINTIFF'S NOTICE OF MOTION AND MOTION IN LIMINE NO. 1 TO EXCLUDE EVIDENCE OF
ADMINISTRATIVE PROCEEDING CONDUCTED BY USC TITLE IX OFFICE

to reach a finding here based on an improper standard of liability.  Even informing the jury—either implicitly or explicitly—that the university reviewed the incident carries the same risk, as the jury is likely to infer that Mr. Premjee's conduct merited investigation and discipline and therefore the actions of the detectives were proper.  When balanced against the substantial risk that the Title IX investigation and conclusions may influence the jury to reach a verdict based on an improper legal standard and thus invite juror error, this evidence should be excluded pursuant to Rule 403.

For these reasons, the entire Title IX investigation, including findings, conclusions, witness statements, and the fact that such investigation occurred should be excluded pursuant to Rule 403.

### V. **EVIDENCE OF ANY AGENCY'S FINDINGS AND CONCLUSIONS IS HEARSAY UNDER FEDERAL RULES OF EVIDENCE 801 AND 802.**

Any entity's determination—including the U.S.C. Title IX office's conclusions, investigation findings—that Mr. Premjee violated the school's code of conduct or other ruling would constitute hearsay under Federal Rules of Evidence, Rules 801 and 802 and should, alternatively, be excluded on this ground.  "Hearsay evidence" is evidence of a statement that was made other than by a witness while testifying at the hearing and that is offered to prove the truth of the matter stated.  Even if a hearsay statement falls under an exception to the rule, it is not admissible if such statement consists of one or more statements that are themselves hearsay.  First, the Title IX office findings and conclusions themselves are hearsay if offered at trial to prove that the defendant officers' conduct was reasonable, justified, and within policy.  Any witness statements from those proceedings are clearly hearsay.

Accordingly, Plaintiffs contend that such determinations, findings, and/or conclusions would be inadmissible hearsay evidence and should be excluded from the trial of this matter.

## VI. CONCLUSION

For the reasons stated above, this Court should grant Plaintiff's Motion *in Limine* #1 and issue an order excluding (1) any evidence, argument, testimony, or reference at trial as to the fact that a Title IX investigation occurred once, twice, or at all; (2) any evidence, argument, testimony, or reference at trial as to any findings and/or conclusions by U.S.C.'s Title IX office; (3) any evidence, argument, testimony, or reference at trial of any witness statements made pursuant to any Title IX investigation.

Dated: October 18, 2019

LAW OFFICES OF VICKI I. SARMIENTO
LAW OFFICES OF DALE K. GALIPO

By  */s/ Vicki I. Sarmiento*
    Vicki I. Sarmiento
    Attorneys for Plaintiffs