LAW OFFICES OF VICKI I. SARMIENTO
A Professional Corporation
VICKI I. SARMIENTO, SBN 134047
333 North Garfield Avenue
Alhambra, California  91801
vsarmiento@vis-law.com
Telephone:  (626) 308-1171
Facsimile  : (626) 308-1101

LAW OFFICES OF DALE K. GALIPO
DALE K. GALIPO, SBN 144074
21800 Burbank Boulevard, Suite 310
Woodland Hills, CA 91367
dalekgalipo@yahoo.com
Telephone:  (818) 347-3333
Facsimile:   (818) 347-4118

*Attorneys for Plaintiff*, ARMAAN K. PREMJEE

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARMAAN KARIM PREMJEE,<br><br>                    Plaintiff,<br><br>vs.<br><br>CITY OF LOS ANGELES; CHIEF CHARLIE BECK, DETECTIVE OSCAR GAMINO, DETECTIVE CARLA ZUNIGA, and DOES 1-10, inclusive.<br><br>                    Defendants. | Case No.: 2:18-cv-04998-AB-(RAOx)<br><br>*The Honorable Andre Birotte, Jr.*<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION IN LIMINE NO. 2 TO EXCLUDE BLOOD ALCOHOL CONTENT RESULT WITHOUT PROPER FOUNDATION; AND OPINIONS ABOUT ITS EFFECTS ON ARSHIA'S ABILITY TO CONSENT TO SEXUAL INTERCOURSE**<br><br>[Trial Date:  12/3/2019] |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD**:

PLEASE TAKE NOTICE that on November 8, 2019, at 11:00 a.m. or as soon

thereafter as this matter may be heard in Courtroom 7B of the above-entitled Court,

Plaintiff will and hereby moves the Court by way of this Motion *in Limine* No. 2 to exclude alleged the blood alcohol content ("BAC") of "Arshia" without proper foundation and to exclude testimony by Dr. Peter Keanan or any other person about effects such a BAC might have had on Arshia's capacity to legally consent to sexual intercourse on April 1, 2017.   Plaintiff makes this motion under Federal Rules of Evidence 401, 402, 403, 404, 702.

**Statement of Local Rule 7-3 Compliance**:  This motion is made following a conference of counsel in which no resolution could be reached.

This Motion is based on this Notice of Motion, the Memorandum of Points and Authorities, the records and files of this Court, and upon such other oral and documentary evidence as may be presented at the time of the hearing.  A proposed order is submitted herewith.

Respectfully submitted,

Dated:  October 18, 2019          LAW OFFICES OF VICKI I. SARMIENTO
                                  LAW OFFICES OF DALE K. GALIPO

                        By:   */s/ Vicki I. Sarmiento*
                                  Vicki I. Sarmiento
                                  *Attorneys for Plaintiff*
                                  ARMAAN PREMJEE

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

This is a civil rights case regarding Mr. Premjee's wrongful arrest and prosecution for rape.  Mr. Premjee was initially arrested for rape of an unconscious woman under Penal Code § 261(a)(4), and his arrest charge was later changed to rape of a person too intoxicated to give legal consent under Penal Code § 261(a)(3)[1], rape of a person too intoxicated to give legal consent.  Mr. Premjee was not guilty under any Penal Code section because and he did not rape Arshia.  Mr. Premjee's arrests were the result of Detectives Gamino and Zuniga's reckless disregard for his innocence.  No reasonable detective would have arrested Mr. Premjee without conducting a thorough investigation and without reviewing the available evidence (including video obtained as early as April 5, 2017) and other information pointing to Mr. Premjee's innocence.

### II.   FACTUAL SUMMARY

Around midnight of April 1, 2017, Mr. Premjee met Arshia at a bar called Banditos located near the U.S.C. campus where they were both students.   Arshia initiated the contact with Mr. Premjee.  They discovered they were both from the same town in Mumbai, India.  Arshia initiated the contact with Mr. Premjee and within minutes of their meeting she began kissing his neck.  At no time did Mr. Premjee or Arshia have a drink or any drugs while they were together at the bar or afterwards.  After making out at the bar they decided to leave Banditos to have consensual sex.  Their interactions inside and outside of Banditos was captured on surveillance videos.  Prior to leaving with Mr. Premjee in an Uber, the Banditos video shows Arshia making

---

[1] Mr. Premjee was also charged with violating Penal Code §289 (penetration by foreign object).  This charge was dismissed by the prosecutor prior to the start of the preliminary hearing.

a universal sexual sign to her friend Kavya Nayar using one hand to form a circle and the index finger from her other hand inserting it in and out of the circle, in a clear signaling that she was leaving to have sex with Mr. Premjee. Within approximately half-hour of leaving Banditos, around 1:04 a.m., Arshia checked-in Mr. Premjee as her guest at Fluor Tower where she lived.  Witness Ronniecia Stringfellow, who worked at Fluor Tower checked them in.  Ms. Stringfellow described them as a "happy couple" and described that she had a pleasant conversation with Arshia and Mr. Premjee.  She also described that Arshia was "flirting" with Mr. Premjee.   Their interactions at the check-in counter of Fluor Tower were also captured on video.

As Mr. Premjee did not know where Arshia lived, she guided him from the elevator to her dormitory where she lived with seven other roommates.  She first took him to her bedroom, but when they saw her roommate sleeping there, Arshia took Mr. Premjee to the living room where she convinced him to stay with her and have sex on an air mattress which had been set up for a weekend guest.  The lights were left ON and anybody going into the living room could clearly see them.  One suitemate, Tanaka, came home and saw them having sex and ran into her bedroom and woke up her roommate, Celine, to tell her there was sex going on in the living room.  Celine looked out the bedroom door and observed the couple having sex.  They continued to listen, describing the moans as those of a "man and woman enjoying sex." Another roommate, Madison, got home and went to the restroom, passing the couple in the living room while they had sex and she described moans of "pleasurable sex" and stated that Arshia's "legs were wrapped around" Mr. Premjee's back as they had sex.   As reported by Officer Meraz who took the roommates' statements on the night of the incident, after the sex was over, two of the roommates confronted Mr. Premjee as he peered out the bathroom door, naked, because they had sex in their common area.  Officer Meraz described the roommates' demeanor as being "embarrassed" and angry at Arshia for her

"non-stop partying."  None of the roommates described the interaction to Officer Meraz as a sexual assault.  They described Mr. Premjee as "polite" and apologetic for disturbing them, put on his clothes, and left.  (Fluor video shows Premjee exiting the dormitory building at 1:28 a.m.).  Meanwhile, Arshia was asleep on the air mattress.

About an hour after Mr. Premjee left Arshia's dorm, one of the roommates called an RA who in turn called campus police and then an ambulance was called. Arshia was transported to a hospital where she arrived at almost 3:00 a.m.  A sample of Arshia's blood was apparently taken close to 4:00 a.m. and according to GAMINO, he learned from "nurse staff that the victim's BAC level was over .3, possibly .325 or .328."

Plaintiff seeks to preclude evidence of Arshia's blood alcohol content (BAC) without proper foundation and to exclude Dr. Keanan or any other person from testifying about the effects of the BAC on Arshia's ability to legally consent to sex with Mr. Premjee.

## III.   PRECLUDE REFERENCE BY ANY WITNESS TO ARSHIA'S BLOOD ALCOHOL CONTENT WITHOUT FOUNDATION

Plaintiff seeks an order precluding anyone other than a qualified toxicologist as to Arshia's BAC allegedly measured 2 ½ hours after her sexual intercourse with Mr. Premjee.  Defendants have not disclosed an expert witness qualified to testify regarding the methods, procedures and adequacy of any tests and/or results.   Defendants are expected to seek introduction of Detective GAMINO's statement that he learned from "nurse staff that [Arshia's] BAC level was over .3, possibly .325 or .328."   In meet and confer discussions, defense counsel stated she would introduce the BAC through Detective GAMINO (just as they did in their motion for summary judgment to which Plaintiff objected) because that is "the way it is done in state court."   Further, defense counsel has stated in expert disclosures that Dr. Peter Keanan, the emergency room physician, would "testify that [Arshia's] blood alcohol level content taken at

approximately 4:00 a.m. was .325" and that it was "descending, and that her blood alcohol level at the time she had intercourse was higher."

### 1. Absent Testimony from the Toxicologist, the BAC is Hearsay

Any testimony by GAMINO or Dr. Keanan of Arshia's alleged BAC is hearsay.

Attempting to get the BAC into evidence through a non-retained expert such as Dr. Keanan must pass muster under Federal Rules of Evidence 702 which states that expert opinion testimony is appropriate if "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." An expert may not be used as a conduit to get otherwise inadmissible hearsay (such as Arshia's alleged BAC) into evidence. An expert relying on hearsay may not "simply transmit that hearsay to the jury. Instead, the expert must form his own opinions by applying his extensive experience and a reliable methodology to the inadmissible materials." *United States v. Mejia*, 545 F.3d 179, 197 (2d Cir. 2008). Under Rule 702, a court must serve as a gatekeeper to ensure that expert testimony is both reliable and helpful to a jury, and a court must exclude "testimony that falls short of achieving either end." *Stillwell v. Smith & Nephew, Inc.*, 482 F.3d 1187, 1192 (9th Cir. 2007).

Unlike a DUI case where the blood test is actually done by personnel at the police station, Arshia's blood was drawn at a hospital not the police station. Thus, attempts to get Arshia's alleged BAC into evidence through Detective GAMINO over a hearsay objection would not meet the basic foundational requirements by state or federal evidentiary standards. Det. GAMINO did not administer the blood alcohol test, he cannot testify about what apparatus was used to administer the test or its operating condition, or whether the test was properly administered, or whether the operator was competent or qualified. Thus, neither GAMINO (or ZUNIGA for that matter) are

qualified to testify about the reliability and trustworthiness of the testing and results obtained by the hospital.

### 2.   Testimony Related to BAC Descending Levels Inadmissible

Dr. Keanan's anticipated testimony about the BAC and the "descending" aspects of it, and that the BAC would have been higher at the time of the sexual intercourse is inadmissible because it is opinion, based on hearsay and speculation.  (See F.R.E. 702, Adv. Comm. Notes (2000) ("The trial judge in all cases of proffered expert testimony must find that it is properly grounded, well-reasoned, and not speculative before it can be admitted.")).  "A court must examine the expert's conclusions in order to determine whether they could reliably flow from the facts known to the expert and the methodology used.  A court may conclude that there is simply too great a gap between the data and the opinion proffered."  *Oddie v. Ford Motor Co.*, 234 F.3d 136, 146 (3d Cir. 2000).

Any testimony by Dr. Keanan as to Arshia's alleged BAC will be unhelpful and unfairly prejudicial to Mr. Premjee and misleading to the jury on the issues to be tried because there is no indication in the record that Dr. Keanan has the information or the knowledge to qualify him to testify about the trustworthiness and reliability of Arshia's purported BAC in terms of the apparatus used to administer the test or its operating condition, or whether the test was properly administered, or who the operator was and whether he/she was competent or qualified.[2]   This failure necessarily clouds any opinions he might have about a "descending alcohol level" and opinions about what it was at the time of the sexual intercourse between Mr. Premjee and Arshia.  It would mislead the jury and be unfairly prejudicial to Mr. Premjee to allow unsubstantiated opinions in this regard.

---

[2] The urine sample taken of Arshia to detect her alcohol level generated a significantly lower result, further calling into question the reliability of the BAC.

### 3. State Law Does Not Help Defendants' Effort to Admit the BAC Without a Proper Foundation

Even under state law, to admit evidence of a blood alcohol level to avoid a hearsay challenge, the proponent of such evidence must demonstrate "a basis for believing that the test which measured blood alcohol was reliable." *Baca* v. California, C13-02968 SBA (N.D. Cal. Jan. 19, 2016) citing *Davenport v. Dep't of Motor Vehicles*, 6 Cal.App.4th 133, 140 (1992); see also Cal. Evid. Code 1280(c). A statement in the police report regarding Plaintiff's blood alcohol level is not independently admissible absent the requisite foundation to establish its reliability. *See Davenport*, 6 Cal.App.4th at 140. "[T]he foundational requirements for establishing the reliability of test results consist of a showing that (1) the apparatus utilized was in proper working order, (2) the test used was properly administered, and (3) the operator was competent and qualified." *Id.* Reliability of the test result generally must be established through expert testimony. *Brown v. Williams*, No. 2:10-CV-00407-PMP, 2013 WL 5370749, at *31 (D. Nev. Sept. 24, 2013), aff'd, 597 Fed. Appx. 417 (9th Cir. 2015) (finding that a toxicology report, "standing alone without expert testimony," was insufficient to establish the level of drugs, if any, that was present).

Due to its incredibly prejudicial effect, litigants must lay a proper foundation for BAC before a Court may allow such evidence into any civil matter. Thus far, Defendants have given no indication such will be the case. Permitting anyone other than a witness competent to testify to Arshia's BAC would mislead the jury, confuse the issues, and cause unfair prejudice to Plaintiff. (Fed. R. Evid. 401, 402, 403).

///

///

///

## IV.   DR. KEANAN CANNOT TESTIFY THAT ARSHIA LACKED THE LEGAL CAPACITY TO CONSENT TO SEXUAL INTERCOURSE BECAUSE IT IS AN ULTIMATE ISSUE OF LAW

Plaintiff moves for an order precluding defense witness Dr. Keanan (non-retained expert), an emergency room doctor present when Arshia was transported to the hospital on April 1st, from offering testimony which he is not allowed to provide, is not qualified to provide, which is speculative, and which would be unhelpful to the jury and unfairly prejudicial to Mr. Premjee.  This includes his expected testimony that "[Arshia] had no capacity whatsoever to consent to sexual intercourse with Armaan Premjee at the time they were in her dorm room," "that Arshia's blood alcohol level content was descending and would have been higher" at the time of the sexual intercourse, and his relaying of inadmissible hearsay to get to his inadmissible legal conclusion.

### 1.  Opinion of Ultimate Issue of Law not Admissible

An expert witness cannot give an opinion as to his/her *legal conclusion* i.e. an opinion on an ultimate issue of law.  (Emphasis in original).  *Hangarter v. Provident Life and Acc. Ins. Co.,* 373 F.3d 998, 1016 (9th Cir. 2004), *In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 557 (U.S.D.C.- C.D. Cal. 2014).  Thus, Dr. Keanan's opinion that Arshia could not have the capacity to legally consent to sex is an opinion on an ultimate issue of law and therefore inadmissible.

### 2.  Dr. Keanan May Not Testify to Issues Not within His Observations and Testing

A disclosed, unretained expert may testify as to his percipient knowledge and may testify as an expert as to what he perceived - however, he may not testify to issues not within his observations and testing.  *Willis v. City of Fresno*, 2013 WL 6145232 (U.S.D.C. – E.D. Cal. 2013).  There is no foundation for Mr. Keanan's testimony, first, because there is no foundation as to Arshia's BAC; second (assuming proper foundation is laid for the BAC), Dr. Keanan has not been shown to be qualified to explain what

effects the alleged BAC level taken at 4:00 a.m. would have had on Arshia when she was having the sexual intercourse at around 1:00 a.m.   Dr. Keanan never met Arshia prior to April 1, he has no idea how alcohol affects her, what she drank, when she drank it.  Nor can his speculation form the basis of an opinion of an ultimate issue of law, that is, that Arshia did not have the capacity to legally consent.

Moreover, it is well-settled that "[a]n honest and reasonable, but mistaken belief, that a sexual partner is not too intoxicated to give legal consent to sexual intercourse is a defense to rape by intoxication." *People v. Giardino*, 82 Cal.App.4th 454, 472 (2000); Cal. Crim. No. 1002 (Jud. Council Jury Instruction 2017 ed.).  *Giardino* set forth the law concerning rape of an intoxicated woman.  In analyzing Penal Code Section 261(a)(3), the court laid out two central foundations:

1.  When interpreting the phrase "prevented from resisting," the jury must determine whether, as a result of intoxication, the victim lacked the legal capacity to give valid consent based on a reasonable and informed use of judgment.

2.  "In deciding whether the level of the victim's intoxication deprived the victim of legal capacity to give consent, the jury must consider all of the circumstances, including the victim's age and maturity."

Thus, a case involving the alleged rape of an intoxicated woman requires a determination of whether her intoxication prevented her from exercising reasonable judgment *and* a consideration of all the circumstances to determine whether the victim's mental impairment was so great that it deprived the victim of the ability to exercise reasonable judgment.   As section 261(a)(3) itself provides, the accused is guilty only if the victim's incapacitating level of intoxication "was known, or reasonably should have been known by the accused."  Just as the California Supreme Court held, in *People v.*

8

*Hernandez,* that a good-faith and reasonable belief that a victim was over the age of consent (18) and voluntarily engaged in sexual intercourse was a defense to statutory rape, "an honest and reasonable, but mistaken belief, that a sexual partner is not too intoxicated to give legal consent to sexual intercourse is a defense to rape by intoxication." *People v. Giardino*, supra at 472.  There is no evidence that Dr. Keanan could competently testify as to what Mr. Premjee perceived at the time of the sexual intercourse, or how any alcohol consumed by Arshia may have affected her judgment and therefore her legal capacity to consent which is an ultimate issue of law in any event on which he cannot give an opinion.

Dr. Keanan's inadmissible and speculative opinions must be excluded.

## V.    CONCLUSION

For the reasons above, the Court should grant Plaintiff's Motion *in Limine* No. 2 to exclude BAC result without proper foundation; and to exclude Dr. Keanan or any other person from testifying that Arshia did not have the legal capacity to consent when she had sexual intercourse with Mr. Premjee; or that her BAC was "descending" and therefore would have been "higher" at the time of the sex.

Dated:  October 18, 2019            **LAW OFFICES OF VICKI I. SARMIENTO**
                                                        **LAW OFFICES OF DALE K. GALIPO**

                                                        By:  ___*/s/ Vicki I. Sarmiento*_____
                                                        VICKI I. SARMIENTO
                                                        Attorneys for Plaintiff

PLAINTIFF'S NOTICE OF MOTION AND MOTION IN LIMINE NO. 2 TO EXCLUDE BLOOD ALCOHOL CONTENT RESULT WITHOUT PROPER FOUNDATION; AND OPINIONS ABOUT ITS EFFECTS ON ARSHIA'S ABILITY TO CONSENT TO SEXUAL INTERCOURSE