MICHAEL N. FEUER, City Attorney
KATHLEEN A. KENEALY, Chief Assistant City Attorney (SBN 212289)
SCOTT MARCUS, Chief, Civil Litigation Branch (SBN 184980)
CORY M. BRENTE, Managing/Supervising Assistant City Attorney (SBN 115453)
ELIZABETH T. FITZGERALD, Deputy City Attorney (SBN 158917)
200 N. Main Street, 6th Floor, City Hall East
Los Angeles, California 90012
Tel: (213) 978-7560   Fax: (213) 978-8785
Email: elizabeth.fitzgerald@lacity.org
*Attorneys for Defendants* **CITY OF LOS ANGELES, CHARLIE BECK, OSCAR GAMINO and CARLA ZUNIGA**

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARMAAN KARIM PREMJEE,<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF LOS ANGELES, CHIEF CHARLIE BECK, DETECTIVE OSCAR GAMINO, DETECTIVE CARLA ZUNIGA,<br><br>Defendants. | Case No. CV18-04998 AB (RAO)<br>*Hon Judge: Andre Birotte, Jr.; Crtm 7B*<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION IN LIMINE NO. 2: MOTION IN LIMINE TO EXCLUDE MENTION OF POLICE SCANDALS, PRIOR BAD ACTS, POLICE PERSONNEL INFORMATION, NEGATIVE MEDIA ACCOUNTS OF POLICE, ETC.**<br><br>[Filed with Defendants' Proposed Order Re: Motion in Limine No. 2]<br><br>**Final Pretrial Conference and Hearing on Motions in Limine**<br>**Date: November 8, 2019, at 11:00 a.m.**<br><br>**Trial Date: December 3, 2019, at 9:00 a.m.**<br>**Courtroom: 7-B** |

**TO THE HONORABLE COURT AND TO PLAINTIFF AND HIS COUNSEL OF RECORD:**

Please take notice that on November 8, 2019, at 11:00 a.m., in Courtroom 7-B, 7th Floor, at the 1st Street Courthouse, Defendants CITY OF LOS ANGELES, **CHARLIE**

1

**BECK, OSCAR GAMINO and CARLA ZUNIGA** will appear before this Honorable Court to move this court in limine to exclude evidence of other lawsuits, police officer personnel history, complaints against any police officers, any bad acts or "scandals" involving police officers and agencies, including but not limited to the Rampart scandal, the Rodney King incident, the May Day incident, the "Consent Decree," and any national incident involving alleged police misconduct.

This motion is made on the following grounds:

1. Evidence of such unrelated incidents constitutes impermissible character evidence; and

2. Unrelated incidents are not relevant to whether defendant' conduct was lawful, and will be unduly prejudicial, cause confusion to the jury and will consume unnecessary time.

This motion is based on this Notice, the attached Memorandum of Points and Authorities, the [proposed] order, the complete files and records of this action, and such further oral and/or documentary evidence as may be presented at the time of the hearing.

This motion is made following the conference of counsel on pursuant to Local Rule 7-3.

Dated: October 18, 2019

                         Respectfully submitted,

**MICHAEL N. FEUER**, City Attorney
**KATHLEEN A. KENEALY**, Chief Assistant City Attorney
**SCOTT MARCUS**, Chief, Civil Litigation Branch
**CORY M. BRENTE**, Managing/Suprv. Assistant City Attorney

By: /S/ *Elizabeth T. Fitzgerald*
       **ELIZABETH T. FITZGERALD**, Deputy City Attorney

*Attorneys for Defendants* **CITY OF LOS ANGELES, CHARLIE BECK, OSCAR GAMINO and CARLA ZUNIGA**

2

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Defendants anticipate that Plaintiff may make mention at trial of unrelated lawsuits, personnel actions and complaints against defendants or other LAPD officers, as well as prior bad acts and "scandals" involving LAPD and its officers and other police agencies and officers to prejudice the defense. Defendants also believe Plaintiff intends to question defendants about their personnel and complaint history. None of this information is relevant to whether defendants acted reasonably and constitutionally. Further, such evidence would amount to impermissible character evidence, and evidence which is unduly prejudicial, confusing, time consuming, and irrelevant.

## II. FACTS

Late in the evening, on Friday, March 31, 2017, USC student "Arshia" who had been smoking marijuana during the day went to a bar called Banditos. She consumed drinks that evening at Banditos, in front of Armaan Premjee. The two began putting hands on each other and Premjee lifted her onto the bar, only to be asked to by the owner to take her down off the bar. The two left Banditos with the assumed plan of having sex. Arshia had consumed a substantial amount of alcohol and marijuana and she was visibly intoxicated.

Premjee took her to his fraternity house, Kappa Sigma, a house that was on "probation". As she got out of the Uber which the two traveled in, she had trouble getting out of the car, walking, and her shoes fell off. Premjee carried her up the fraternity stairs because he "thought it would be romantic". His fraternity brothers told a different story at the premlinary hearing stating that Arshia could not walk straight and was very drunk. The two Premjee's fraternity brothers directed Premjee to send Arshia home immediately in an Uber given that she was stumbling and could was visibly drunk. Premjee tried to sneak Arshia into his room, anyhow. The two fraternity brothers again directed Premjee to send Arshia home to her dorm and *not* to get in the Uber with her. When the Uber arrived, Premjee did in fact jump in the Uber with Arshia and went to her dorm with her

1 The fraternity brothers were so disgusted with Premjee's behavior they called the
2 headquarters of Kappa Sigma on their own the following morning to report Premjee's
3 behavior, and he was expelled from the fraternity.

4     At her dorm, Arshia was so intoxicated she was stumbling and having trouble
5 pushing the elevator button up to her dorm room floor. Premjee came with her to her room.
6 He told Arshia "you are pretty drunk, are you sure you want to do this?" The two ended
7 up having sex in the living room of Arshia's dorm room suite. Two of Arshia's roommates
8 saw a naked Armaan Premjee on top of a female and yelled at him "she is completely
9 wasted, what are you doing?" At that point, Arshia was no longer moving and had passed
10 out from alcohol. Armaan Premjee quickly left. Arshia's roommates were unable to wake
11 her and paramedics were called. Arshia's blood alcohol was measured at .324 and she
12 was intubated so she would not die. When she awoke, she remembered nothing of the
13 evening. When she learned that someone had taken advantage of her extreme drunkenness
14 she cried and said "who would do such a thing to a person in my state?"

15     As for Premjee, he left the dorm, returned to Banditos, and immediately texted one
16 of his friends as follows: "Bro, I fucked up, or at least I think I did" and asked his friend
17 if his actions would qualify as "sexual assault". In his message he stated that Arshia was
18 blackout drunk when she met him and she was "still blackout drunk" when they had sex.
19 He texted his friend that "she couldn't walk straight" and "even during sex she was sloppy
20 and all over the place." Premjee's friend advised him to "maintain that you were…as
21 drunk as her if not worse. That way you cannot be blamed."

22     At deposition Premjee was asked if he had any remorse for his actions that night
23 and he responded "absolutely not, she knew exactly what she wanted and I gave it to her."
24 He further said that he was embarrassed being seen naked by Arshia's roommates and had
25 testified that he felt the roommates owed ***him*** an apology for yelling at him about having
26 sex with their incapacitated roommate.

27     At the preliminary hearing, the court, due to arguably incorrect reasons concluded
28 that Arshia had pursued Premjee and there was no evidence of withdrawal of consent by

4

Arshia. The actual legal standard, however, that should have been applied was whether Arshia had the *capacity* to consent. Consent, on its own, was not the proper legal standard.

### III. EVIDENCE OF UNRELATED POLICE LAWSUITS, OFFICER PERSONNEL HISTORY, COMPLAINTS AND SCANDALS SHOULD BE EXCLUDED UNDER FEDERAL RULE OF EVIDENCE 404

Under 404(b) of the Federal Rules of Evidence, other lawsuits against police officers and agencies, police officer personnel history, complaints against any police officers, and any bad acts or "scandals" involving police officers and agencies cannot be used to prove "conduct in conformity with character," intent, or a common pattern in this case. Rule 404(b) provides:

> "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action and conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan knowledge, identity, or absences of mistake or accident…"

The Ninth Circuit has held that evidence of prior acts of a defendant police officer in a civil rights action is inadmissible. *Gates v. Rivera,* 993 F.2d 697, 700 (9th Cir. 1993). In *Gates*, the defendant police officer, Rivera, was allowed to testify that in his 16 ½ years as a police officer, he had not shot anyone and that he had never before discharged his weapon. *Id.* at 700. The Appellate Court noted that such evidence was not admissible in a civil rights action under Federal Rules of Evidence 404 because it was irrelevant since intent was not an issue in a case alleging excessive force. *Id.*

///
///
///
///
///

5

Rather the question to be resolved is whether objectively, the officer's use of force is reasonable. *Id.* Other circuits are in accord. In *Morgan v. City Marmaduke, Ark.* The 8th Circuit Court concluded:

> "In any event, issues of motive and intent are especially Irrelevant in [excessive force cases]. A test "in an excessive force case is an objective one." [citation omitted]. Thus, "an officer's evil intentions will make a 4th Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional."

*Morgan v. City Marmaduke, Ark.,* 958 F.2d 207, 212 (8th Cir. 1992), citing *Graham v. Connor,* 490 U.S. 386, 397, 109 Sup. Ct. 1865, 104 L.E.2d 443 (1989). Further in *Berkovich v. Hicks,* 922 F.2d 1018 (2nd. Cir. 1991), the Second Circuit affirmed the trial court's decision to exclude evidence of prior complaints against a police officer.

The court held the Plaintiffs' attempt to introduce evidence of prior complaints "amounts to no more than a veiled attempt to do what Rule 404(b) expressly prohibits – introducing evidence of bad acts to show the defendants' propensity to commit such acts." *Id* at 1022. See also, *Hopson v. Frederickson,* 961 F.2d 1374, 1379 (8th Cir 1992) (evidence of prior internal police investigations not admissible at trial).

Thus, any attempt to introduce evidence of lawsuits, personnel complaints, other incidents of alleged misconduct or reference to police "scandals" for the purpose of establishing "conduct in conformity with character" must be precluded by this Court.

This type of evidence is irrelevant and clearly prohibited by Rule 404(b).

///
///
///
///

6

## IV. OTHER INSTANCES OF ALLEGED MISCONDUCT IS NOT "HABIT" EVIDENCE

Finally, Plaintiffs may also argue that prior acts of individual officers are relevant to show habit under Federal Rule of Evidence 406. Rule 406 provides:

> "[e]vidence of the habit of a person or the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice."

In the Advisory Committee's notes pertaining to Rule 406, commentators discuss "habit" as follows:

> "…Rule [406] is consistent with prevailing views. Much evidence is excluded simply because of failure to achieve the status of habit. Thus, evidence of intemperate "habits" is generally excluded when offered as proof of drunkenness in accident cases, annote. 46 A.L.R.2d 103 and *evidence of other assaults is inadmissible to prove the instant one in a civil assault action,* annote., 66 A.L.R.2d 806." (Emphasis added).

In the present case, there is no evidence that Detective Gamino and Zuniga *always* act according to the allegations in Plaintiff's Complaint. Moreover, any unrelated personnel complaints, LAPD "scandals", lawsuits, arrests or any other incidents of alleged misconduct against any officer simply would not meet the "invariable regularity requirements" in Evidence Rule 406 to establish habit. Such conduct would more properly be characterized as "volitional" rather than "habitual" and therefore would not fall within the ambit of Rule 406. Accordingly, reference to such conduct must be excluded from this trial.

///

7

## V. EVIDENCE OF OTHER BAD ACTS SHOULD NOT BE EXCLUDED UNDER FEDERAL RULE OF EVIDENCE 403

The introduction of bad acts and/or misconduct regarding any officers will result in an inefficient use of this Court's time. Allowing this type of irrelevant information before the jury will only create mini-trials within a trial, that will greatly prejudice defendants, confuse the jury, waste Court resources, and prolong the trial needlessly. Therefore, such evidence should be excluded under Federal Rule of Evidence 403.

## VI. CONCLUSION

For the foregoing reasons, defendants respectfully request that this Court preclude Plaintiff from introducing any evidence or making any reference to other lawsuits against police officers and agencies, police officer personnel history, complaints against any police officers, and any bad acts or "scandals" involving police officers and agencies including but not limited to the Rampart scandal, the Rodney King incident, the May Day incident, the "Consent Decree," or any national case involving alleged misconduct by police.

Dated: October 18, 2019

Respectfully submitted,

**MICHAEL N. FEUER**, City Attorney
**KATHLEEN A. KENEALY**, Chief Assistant City Attorney
**SCOTT MARCUS**, Chief, Civil Litigation Branch
**CORY M. BRENTE**, Managing/Suprv. Assistant City Attorney

By: /S/ Elizabeth T. Fitzgerald
    **ELIZABETH T. FITZGERALD**, Deputy City Attorney

*Attorneys for Defendants* **CITY OF LOS ANGELES, CHARLIE BECK, OSCAR GAMINO and CARLA ZUNIGA**