**MICHAEL N. FEUER**, City Attorney
**KATHLEEN A. KENEALY,** Chief Assistant City Attorney (SBN 212289)
**SCOTT MARCUS,** Chief, Civil Litigation Branch (SBN 184980)
**CORY M. BRENTE,** Senior Assistant City Attorney (SBN 115453)
**ELIZABETH T. FITZGERALD,** Deputy City Attorney (SBN 158917)
200 N. Main Street, 6th Floor, City Hall East
Los Angeles, California 90012
Tel: (213) 978-7560   Fax: (213) 978-8785
Email: elizabeth.fitzgerald@lacity.org
*Attorneys for Defendants* **CITY OF LOS ANGELES**, **OSCAR GAMINO and CARLA ZUNIGA**

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARMAAN KARIM PREMJEE,<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF LOS ANGELES, DETECTIVE OSCAR GAMINO, and DETECTIVE CARLA ZUNIGA,<br><br>Defendants. | **Case No. CV18-04998 AB (RAO)**<br>*Hon Judge: Andre Birotte, Jr.; Crtm 7B*<br>*Hon Magistrate Judge: Rozella A. Oliver*<br><br>**DEFENDANTS' AMENDED MEMORANDUM OF CONTENTIONS OF FACT AND LAW**<br><br>**Pretrial Conference: July 17, 2020**<br>**Time: 11:00 a.m.**<br>**Trial Date: August 25, 2020**<br>**Time: 8:30 a.m.** |

TO THE HONORABLE COURT AND TO THE CLERK OF THE COURT:

Defendants CITY OF LOS ANGELES, DETECTIVE OSCAR GAMINO and DETECTIVE CARLA ZUNIGA hereby submit the following AMENDED Memorandum of Contentions of Fact and Law.

**I.   CONTENTIONS OF FACTS:**

Late in the evening, on Friday, March 31, 2017, USC student "Arshia" who had been smoking marijuana during the day went to a bar called Banditos. She consumed her sixth drink that evening at Banditos, in front of Armaan Premjee (he was not aware of how many prior drinks she had consumed.) The two began putting hands on each

1

1  other and Premjee lifted her onto the bar, only to be asked to by the owner to take her
2  down off the bar. The two left Banditos with the assumed plan of having sex. Arshia had
3  consumed a substantial amount of alcohol and marijuana and she was visibly
4  intoxicated.
5      Premjee took her to his fraternity house, Kappa Sigma, a house that was on
6  "probation". As she got out of the Uber which the two traveled in, she had trouble
7  getting out of the car, walking, and her shoes fell off. Premjee carried her up the
8  fraternity stairs because he "thought it would be romantic". His fraternity brothers told
9  a different story at the premlinary hearing stating that Arshia could not walk straight and
10 was very drunk. The two Premjee's fraternity brothers directed Premjee to send Arshia
11 home immediately in an Uber given that she was stumbling and could was visibly drunk.
12 Premjee tried to sneak Arshia into his room, anyhow. The two fraternity brothers again
13 directed Premjee to send Arshia home to her dorm and not to get in the Uber with her.
14 When the Uber arrived, Premjee did in fact jump in the Uber with Arshia and went to
15 her dorm with her. The fraternity brothers were so disgusted with Premjee's behavior
16 they called the head quarters of Kappa Sigma on their own the following morning to
17 report Premjee's behavior, and he was expelled from the fraternity.
18      At her dorm, Arshia was so intoxicated she was stumbling and having trouble
19 pushing the elevator button up to her dorm room floor. Premjee came with her to her
20 room. He told Arshia "you are pretty drunk, are you sure you want to do this?" The two
21 ended up having sex in the living room of Arshia's dorm room suite. Two of Arshia's
22 roommates saw a naked Armaan Premjee on top of a female and yelled at him "she is
23 completely wasted, what are you doing?" At that point, Arshia was no longer moving
24 and had passed out from alcohol. Armaan Premjee quickly left. Arshia's roommates
25 were unable to wake her and paramedics were called. Arshia's blood alcohol was
26 measured at .324 and she was intubated so she would not die. When she awoke, she
27 remembered nothing of the evening. When she learned that someone had taken
28 advantage of her extreme drunkenness she cried and said "who would do such a thing to

a person in my state?"

As for Premjee, he left the dorm, returned to Banditos, and immediately texted one of his friends as follows: "Bro, I fucked up, or at least I think I did" and asked his friend if his actions would qualify as "sexual assault". In his message he stated that Arshia was blackout drunk when she met him and she was "still blackout drunk" when they had sex. He texted his friend that "she couldn't walk straight" and "even during sex she was sloppy and all over the place." Premjee's friend advised him to "maintain that you were…as drunk as her if not worse. That way you cannot be blamed."

LAPD Southwest patrol officers, after being summoned to the campus by USC officers, detained Plaintiff in his room on the morning of April 1, 2017 and took him to the Southwest Station, and then to Santa Monica hospital for a specimen collection. Thereafter, they returned him to Southwest police station, where he was interviewed by detectives Gamino and Zuniga, who had already spoken to the patrol officers, the victim, and her nurse (who said the victim's blood alcohol level was .324). Plaintiff was driven home by the detectives and released a few hours later on that same day, April 1, 2017. (He was arrested subsequently on April 11, 2017, and criminally prosecuted, but that aspect of this case has been dismissed on partial summary judgment.)

Defendants note several important facts relating to damages he may claim arising from his April 1. 2017 arrest: At deposition, Plaintiff was asked if he had any remorse for his actions that night and he responded "absolutely not, she knew exactly what she wanted and I gave it to her." He further said that he was embarrassed being seen naked by Arshia's roommates and had testified that he felt the roommates owed him and apology for yelling at him about having sex with their incapacitated roommate.

Plaintiff's own cell phone texts from that evening revealed plaintiff himself thought he had committed a sexual assault on the victim.

At the preliminary hearing, the court, due to arguably incorrect reasons concluded that Arshia had pursued Premjee and there was no evidence of withdrawal of consent by Arshia. The actual legal standard, however, that should have been applied was whether

Arshia had the *capacity* to consent. Consent, on its own, was not the proper legal standard. Defendants are moving to exclude the result of the preliminary hearing.

## II. PLAINTIFF'S CLAIMS

Following the Court's Order granting, in part, Defendants' Motion for Summary Adjudication (Doc. 79), the following claims remain to be tried:

**Claim 1:** Violation of 42 U.S.C. Section 1983, Arrest without probable cause on April 1, 2017 by defendants Zuniga and Gamino

**Claim 4:** *Monell* -- Section 1983 official policy, fail to train, ratification

**Claim 7:** Bane Act violation Section 52.1 for false arrest of plaintiff on April 1, 2017 by Gamnio, Zuniga and the City of Los Angeles.

**Claim 8:** False Arrest of plaintiff on April 1, 2017 by Gamnio, Zuniga and the City of Los Angeles.

Chief Beck and the negligence claims were voluntarily dismissed. All of the above claims relate to Plaintiff's arrest on April 1, 2017, only. (Doc. 79) Any damages would be limited to those from the alleged arrest of April 1, 2017.

## III. ELEMENTS REQUIRED TO ESTABLISH PLAINTIFF'S CLAIMS

**Claim 1:** Violation of 42 U.S.C. Section 1983, Unreasonable Seizure - Arrest without probable cause. The elements of this claim are found in Ninth Circuit Model Jury Instruction 9.23 (2018 ed. modified):

"In general, a seizure of a person by arrest without a warrant is reasonable if the arresting officer[s] had probable cause to believe the plaintiff has committed or was committing a crime.

In order to prove the seizure in this case was unreasonable, the plaintiff must prove by a preponderance of the evidence that he was arrested on April 1, 2017 without probable cause.

"Probable cause" exists when, under all of the circumstances known to the officer[s] at the time, an objectively reasonable police officer would conclude there is a fair probability that the plaintiff has committed or was committing a crime. Although the

facts known to the officer are relevant to your inquiry, the officer's intent or motive is not relevant to your inquiry.

Under California law, it is a crime to have sexual intercourse with a person who is prevented from resisting by any intoxicating or anesthetic substance, or any controlled substance, and this condition was known, or reasonably should have been known by the accused; (or) where a person is at the time unconscious of the nature of the act, and this is known to the accused. (Cal. Penal Code 261 (3)&(4))

**Claim 4:** *Monell* - Section 1983 official policy, practice or custom. The elements of this claim are found in Ninth Circuit Model Jury Instruction 9.5 (2018 ed.):

"In order to prevail on his § 1983 claim against defendant City of Los Angeles alleging liability based on an official policy, practice, or custom, the plaintiff must prove each of the following elements by a preponderance of the evidence:

1. On April 1, 2017 Detectives Gamino and Zuniga acted under color of state law;

2. the acts of Detectives Gamino and Zuniga deprived the plaintiff of his particular rights under the United States Constitution as explained in later instructions;

3. Detectives Gamino and Zuniga acted pursuant to an expressly adopted official policy or a widespread or longstanding practice or custom of the defendant City of Los Angeles; and

4. the defendant City of Los Angeles' official policy or widespread or longstanding practice or custom caused the deprivation of the plaintiff's rights by Detectives Gamino and Zuniga; that is, the City of Los Angeles' official policy or widespread or longstanding practice or custom is so closely related to the deprivation of the plaintiff's rights as to be the moving force that caused the ultimate injury.

A person acts "under color of state law" when the person acts or purports to act in the performance of official duties under any state, county, or municipal law, ordinance or regulation. The parties have stipulated that Detectives Gamino and Zuniga acted under color of state law.

"Official policy" means a formal policy, such as a rule or regulation adopted by the

defendant City of Los Angeles resulting from a deliberate choice to follow a course of action made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.

"Practice or custom" means any longstanding, widespread, or well-settled practice or custom that constitutes a standard operating procedure of the defendant City of Los Angeles.

If you find that the plaintiff has proved each of these elements, and if you find that the plaintiff has proved all the elements he is required to prove under Instruction Nos. 9.3 and 9.23 your verdict should be for the plaintiff. If, on the other hand, you find that the plaintiff has failed to prove any one or more of these elements, your verdict should be for the defendant."

**Claim 7:**  Bane Act violation Section 52.1. The elements to establish this claim can be found in CACI 3066 (2020 ed. Modified):

"Armaan Premjee claims that Detectives Gamino and Zuniga intentionally interfered with his civil rights by threats, intimidation, or coercion. To establish this claim, Armaan Premjee must prove all of the following:

1. That Detectives Gamino and Zuniga made threats of violence against Armaan Premjee on April 1, 2017 causing Armaan Premjee to reasonably believe that if he exercised his right to be free from unreasonable seizures, Detectives Gamino and Zuniga would commit violence against him and that Detectives Gamino and Zuniga had the apparent ability to carry out the threats;

2. That Armaan Premjee was harmed; and

3. That Detectives Gaminoa and Zuniga's conduct was a substantial factor in causing Armaan Prejees' harm.'

Any Bane Act Claim must establish both a lack of probable cause to arrest, as well as an intent to violate the constitutional rights of the accused.  *Cornell v City of San Francisco,* 225 Cal. Rptr. 3d 356, 384 (Cal. Ct. App. 2017)

**Claim 8:** False Arrest and False Imprisonment: Elements of this state law claim can be found at CACI 1401 AND 1402:

"Armaan Premjee claims that he was wrongfully arrested by Detectives Gamino and Zuniga on April 1, 2017. To establish this claim, Armaan Premjee must prove all of the following:

    1. That Detectives Gamino and Zuniga arrested Armaan Premjee without a warrant;

    2. That Armaan Premjee was harmed; and 3. That Detectives Gamino and Zuniga's conduct was a substantial factor in causing Armaan Premjee's harm.

Detectives Gamino and Zuniga claim the arrest was not wrongful because they had the authority to arrest Armaan Premjee without a warrant. If Detectives Gamino and Zuniga prove that they were told that Armaan Premjee had sexual intercourse with a person who is prevented from resisting by any intoxicating or anesthetic substance, or any controlled substance, and this condition was known, or reasonably should have been known by the accused; (or) where a person is at the time unconscious of the nature of the act, and this is known to the accused, this would establish that defendants had reasonable cause to believe that plaintiff had committed a felony, whether or not a felony had actually been committed, then Detectives Gamino and Zuniga had the authority to arrest Armaan Premjee on April 1, 2017 without a warrant.

## IV. AFFIRMATIVE DEFENSES:

Qualified Immunity as to Claim 1; probable cause as to Claims 7 and 8.

As to probable cause, under *U.S. v Ramirez*, 473 F.3d 1026, 1035-37 (9th Cir. 2007) the collective knowledge doctrine applies "although all of the information known to the law enforcement officers involved in the investigation is not communicated to the officer who actually makes the stop," and an officer may act "based in part on information or directions from other law enforcement officials." (internal citation omitted) Where one officer knows facts constituting reasonable suspicion or probable cause (sufficient to justify action under an exception to the warrant requirement), and he communicates an

appropriate order or request, another officer may conduct a warrantless stop, search, or arrest without violating the Fourth Amendment.

Also, law enforcement officers do not have to rule out the possibility of innocent behavior one probable cause is established. *United States v. Holland*, 510 F.2d 453, 455 (9th Cir.), cert. denied, 422 U.S. 1010, 45 L. Ed. 2d 674, 95 S. Ct. 2634 (1975).

## V.  DEFENDANTS' EVIDENCE IN OPPOSITION TO EACH CLAIM

For each claim, defendants will present the initial patrol officers' Investigative Report, and the testimony of Detective Gamino, Detective Zuniga, and possibly District Attorney Lana Kim, and medical personnel who saved Arshia's life, intubated Arshia and determined she was suffering from nearly fatal alcohol poisoning (.324, and possibly higher earlier), roommates of Arshia, Armaan Premjee (if necessary), Armaan Premjee's Fraternity brothers who observed Arshia's incapacitation (if necessary); and possibly other witnesses and texts of plaintiff as to any of his alleged damages.

## VI.  EVIDENTIARY PROBLEMS

Evidentiary issues have been raised in Defendants' and Plaintiffs' motions in limine which will be heard on the first day of trial. It is important to note that Plaintiff, despite receiving this Court's Order on summary judgment (Doc. 79), is still pursuing negligence theories of recovery, as well as damages unrelated to the April 1, 2017 arrest, which will be addressed at the final pretrial conference with the Court.

Plaintiff will likely object to the original investigation report written by patrol officers, relied upon by Detectives Gamino and Zuniga, as hearsay. However, hearsay evidence is competent and admissible to show probable cause for a warrantless arrest. See *Hart v. Parks,* 450 F.3d 1059, 1066 (9th Cir. 2006) (in case where appellant challenged the lawfulness of his warrantless arrest Ninth Circuit found arrest constitutional even though probable cause was based on hearsay, because "[p]olice may rely on hearsay and other evidence that would not be admissible in a court to determine probable cause"); 6A C.J.S. Arrest § 21 (2008) (treatise article on arrest or detention without warrant notes that "[r]easonable or probable cause for arrest is not limited to

evidence which would be admissible on the issue of guilt, but it may be based on hearsay information. Thus reliable hearsay is competent and admissible to show probable cause. However, the weight to be given to hearsay evidence is a matter for the sound discretion of the court." (citations omitted))

Defendants Gamino and Zuniga are not conceding they arrested plaintiff on April 1, 2017. That will need to be addressed at the pretrial conference as well.

## VII. CONTENTIONS OF LAW:

1. If there was an arrest, there was probable cause to arrest Plaintiff on April 1, 2017;

2. Defendants Gamino and Zuniga did not intend to violate the constitutional rights of Plaintiff on April 1, 2017

3. The law was not clearly established at the time of April 1, 2017 that the warrantless detention (or arrest) of Plaintiff was unconstitutional. The officers had an investigative report containing eyewitness statements that plaintiff had sexual intercourse with an unconscious person, who was unconscious during the act; and the victim had a blood alcohol content of .325, four times the legal limit, and was incapable of having the requisite capacity to consent, and Plaintiff was aware of this.

## VIII. BIFURCATION OF ISSUES

Defendants request that the trial bifurcated into a (1) liability and damages re: April 1, 2017 arrest only, and (2) *Monell*[1] and punitive damages phase, if needed.

Dated: July 6, 2020         **MICHAEL N. FEUER**, City Attorney

By: /S/ *Elizabeth T. Fitzgerald*
**ELIZABETH T. FITZGERALD,** Deputy City Attorney
*Attorneys for Defendants* **CITY OF LOS ANGELES, OSCAR GAMINO and CARLA ZUNIGA**

---

[1] Plaintiff claims to be pursuing *Monell* claim, but may be instead pursuing a *Canton* claim. Under *Connick v Thompson,* 563 U.S. 51 (2011), Plaintiff would need to demonstrate a deliberate choice of a policy maker not to train on a subject, that demonstrates deliberate indifference, and is based upon numerous and widespread instances of known misconduct as a result of inadequate training. Plaintiff has identified no such policymaker or evidence in discovery. Obviously, such a subject in phase one would be confusing to the jury and time consuming, and does not result in any additional damages to Plaintiff over those from the unreasonable seizure claim. If there is no underlying constitutional violation found in phase one, there would be no *Monell* claim. *City of Los Angeles v Heller*, 475 U.S. 796 (1986)