LAW OFFICES OF VICKI I. SARMIENTO
A Professional Corporation
VICKI I. SARMIENTO, SBN 134047
333 North Garfield Avenue
Alhambra, California 91801
vsarmiento@vis-law.com
Telephone: (626) 308-1171
Facsimile : (626) 308-1101

LAW OFFICES OF DALE K. GALIPO
DALE K. GALIPO, SBN 144074
21800 Burbank Boulevard, Suite 310
Woodland Hills, CA 91367
dalekgalipo@yahoo.com
Telephone: (818) 347-3333
Facsimile: (818) 347-4118

*Attorneys for Plaintiff*, ARMAAN K. PREMJEE

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

ARMAAN KARIM PREMJEE,

Plaintiff,

vs.

CITY OF LOS ANGELES; CHIEF CHARLIE BECK, DETECTIVE OSCAR GAMINO, DETECTIVE CARLA ZUNIGA, and DOES 1-10, inclusive.

Defendants.

Case No.: 2:18-cv-04998-AB-(RAOx)

*The Honorable Andre Birotte, Jr.*

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION IN LIMINE NO. 1 TO EXCLUDE MENTION THAT MR. PREMJEE WAS NOT HELD TO ANSWER AT THE PRELIMINARY HEARING**

Final Pre-Trial Conf.: July 17, 2020
Time: 11:00 a.m.
Crtrm.: 7B

[Trial Date: August 25, 2020]

Plaintiff hereby opposes Defendants' Motion in Limine No. 1 which seeks to preclude any mention that the criminal case against him was dismissed at the preliminary hearing. As explained below, Plaintiff contends that the finding of no "reasonable suspicion" to hold Plaintiff to answer at the preliminary hearing is circumstantial evidence that his arrest lacked probable cause. By the time of the preliminary hearing Defendants had gathered much more information to try to get Mr. Premjee bound over. Even with the additional information (which they did not have on April 1, 2017), the evidence was lacking and insufficient to meet the low burden at the preliminary hearing.

## I. FACTUAL MISREPRESENTATIONS IN DEFENDANTS' MOTION

Defendants' motion adopts a false narrative used by Defendant ZUNIGA in her search warrant affidavit (prepared *after* the criminal case had been dismissed) so that a judge would give her a subpoena to obtain Mr. Premjee's USC Title IX investigation file. Specifically, the false narrative is that "two of Arshia's roommates saw a naked Armaan Premjee on top of a female and yelled at him 'she is completely wasted, what are you doing….' and at that point Arshia was no longer moving and was passed out from alcohol…. Armaan Premjee quickly left and her roommates were unable to wake her and paramedics were called." (See Def. MIL #1 4:4-8).

This is patently untrue, misleading, and an incorrect depiction factually and chronologically of what happened when Mr. Premjee and Arshia engaged in consensual sex. Even Defendant Detective GAMINO agreed at his deposition that those specific facts as laid out in ZUNIGA's search warrant affidavit were "inaccurate." When asked "if any of the witnesses said words to the effect, hey, I saw her laying there, she is completely unconscious and he's having sex with her," GAMINO responded, "No." (See Gamino Depo. Transcript 156:24-157:2, 158:2-21, 159:7-160:7 attached hereto as Exhibit 1).

ZUNIGA, herself, went around in circles at her deposition refusing to answer direct questions about her false presentation of the facts in her search warrant affidavit until she finally answered, "No" in response to the question: "Did anyone say they saw [Arshia] unconscious while they were having the sex, or before they were having the sex?" (See Zuniga Depo. Transcript 35:24-36:2 attached hereto as Exhibit 2).

The roommates never confronted Mr. Premjee or Arshia while they were having sex in the living room with the lights ON -- they stayed in their bedrooms listening to the "moans" of a "woman and man enjoying sex," and one roommate actually walked by them on her way to the bathroom and told investigating officers Arshia's "legs were wrapped around his waist." The roommates never said Arshia was unconscious while Mr. Premjee was having sex with her, or that they confronted him in the act of having sex. The roommates came out of their rooms after the sex had ended, and Mr. Premjee was in the bathroom cleaning up. The roommates were upset that they had sex in the common area and at Arshia's "nonstop partying." Mr. Premjee apologized for disturbing them, put on his clothes, and left. The roommates, themselves, told the investigating officer that night that Mr. Premjee was very "polite" and apologetic for disturbing them.

Second, it is undisputed that Mr. Premjee and Arshia never had a drink together before they left the Banditos bar to have sex. The representation that "she consumed her sixth drink that evening at Banditos, in front of Armaan Premjee" is verifiably false and misleading. Mr. Premjee was not aware of how many drinks Arshia had consumed nor did they have any drinks together. Surveillance video captured the entirety of the interactions between Arshia and Mr. Premjee from the time they met for the first time at the bar after midnight until they left to have sex. At no time did Arshia have a drink in front of Mr. Premjee. Mr. Premjee never bought her a drink and they never had a drink in front of each other at Banditos (or at any time that evening for that matter).

Third, in selective, out-of-context deposition testimony of Mr. Premjee, the City Attorney paints him as an angry guy who "gave" Arshia "what she wanted" and that he expected that the roommates owed *him* an apology "for yelling at him about having sex with their incapacitated roommate." (See Def. MIL #1 4:20-24). This is a distortion of Mr. Premjee's actual testimony.

## II. BRIEF STATEMENT OF FACTS

This is a civil rights case arising from Mr. Premjee's arrest without probable cause on April 1, 2017.

At around midnight of April 1, 2017, Mr. Premjee met Arshia for the first time in his life at a bar called Banditos located near the U.S.C. campus where they were both students. Arshia initiated the contact with Mr. Premjee. They discovered they were both from the same town in Mumbai, India. Arshia was very aggressive and within minutes of their meeting she began kissing his neck. After making out at the bar they decided to leave Banditos to have consensual sex. Their interaction inside and outside of Banditos was captured on surveillance videos. Prior to leaving with Mr. Premjee in an Uber, the Banditos video shows Arshia making a universal sign for "sex" to her friend Kavya Nayar using one hand to form a circle and the index finger from her other hand inserting it in and out of the circle, in a clear signaling that she was leaving to have sex with Mr. Premjee. Witnesses in the Uber, including the driver, described the couple as heavily making out during the ride. Within approximately half-hour of leaving Banditos, Arshia checked-in Mr. Premjee as her guest at Fluor Tower where she lived. Witness Ronniecia Stringfellow, who worked at Fluor Tower checked them in. Ms. Stringfellow described them as a "happy couple" and stated she had a pleasant conversation with them. She also stated that Arshia was "flirting" with Mr. Premjee. Their interactions at the check-in counter of Fluor Tower were also captured on video.

Arshia led Mr. Premjee to her dormitory suite in an upper floor which consisted of several bedrooms and where Arshia lived with 5 other roommates. She first led him to her bedroom (but a roommate was in there sleeping), and then into the living room where they eventually had consensual sex with the lights ON. Three of her roommates saw and heard the sex as it was taking place describing the "moans" of a "man and woman enjoying sex" and one roommate said she saw Mr. Premjee on top of Arshia while she had "her legs wrapped around his waist." After Mr. Premjee left the dormitory about 1:25 a.m., Arshia's roommates tried to wake her because she was in the living room. She had fallen asleep. However, by 2:45 a.m. she was unresponsive and one of the roommates called for an ambulance. At the hospital, 2 ½ hours after the consensual sex, it was reported, unofficially, that Arshia's BAC was .325 and she was suffering from alcohol poisoning. At this time, a supervisor at LAPD instructed the initial responding officers (Meraz and Zamora) to arrest Mr. Premjee.

Mr. Premjee was roused out of bed around 7:30 a.m., April 1, at his fraternity where he lived. He was handcuffed and taken to the police station, then to a hospital for a sexual assault suspect medical examination, and back to the police station. He was handcuffed at all times. He spent several hours in custody between the station and the hospital. He was not free to leave, detained in a cell, and handcuffed at all times that he was moved outside of the cell, with no food or water for hours.

Mr. Premjee's warrantless arrest was the result of defendants' reckless disregard for his innocence. No reasonable police officer would have arrested Mr. Premjee on the morning of April 1 without conducting the most minimal investigation and without reviewing the available evidence and information pointing to Mr. Premjee's innocence. Defendants knew where he lived. Mr. Premjee did not conceal his identity at any time. City employees and Defendants Gamino and Zuinga caused Mr. Premjee to be arrested in haste and without probable cause.

After hearing extensive testimony and evidence, the criminal charges against Mr. Premjee were dismissed at the preliminary hearing. The burden of proof at a preliminary hearing is a very low burden of "reasonable suspicion" that a crime occurred. Even with more information drudged up by Defendants at the time of the preliminary hearing, the evidence was still insufficient to meet the minimal burden of "reasonable suspicion" at the preliminary hearing. This is circumstantial evidence that Mr. Premjee's April 1, 2017 arrest—with much less information available than at the preliminary hearing—lacked probable cause.

## III. DEFENDANTS DO NOT CITE ANY AUTHORITY FOR EXCLUSION OF THE PRELIMINARY HEARING RESULT

Defendants cite no 9th Circuit authority to support their motion to exclude evidence that Mr. Premjee prevailed at his preliminary hearing and criminal charges were dismissed. The cases they cite are out of the 5th and 10th Circuits, all involve federal criminal cases, and basically concur that evidence of an "acquittal" is "generally inadmissible" in a subsequent criminal case as "irrelevant" because it is not probative of the defendant's innocence in another criminal the case at trial (unless involve issues of double jeopardy or collateral estoppel) and constitutes "hearsay." *See United States v. De la Rosa,* 171 F.3d 215, 219 (5th Cir. 2019). The evidence is "generally inadmissible" "because an acquittal …. [proves] only that the prosecution failed to establish the essential elements of the crime beyond a reasonable doubt" i.e. failed in its burden of proof. *Pico v. Woodford*, 2008 WL 4811093 *6 (C.D. Cal. 2008 Eastern Div.) see also, *United States v. De la Rosa,* 171 F.3d 215, 219 (5th Cir. 2019). Here, however, there was no "acquittal" involved because there was no criminal trial, only a preliminary hearing which found there was no "reasonable suspicion" that a crime occurred. The dismissal occurred after 3-days of testimony and evidence at a preliminary hearing. This is circumstantial evidence of whether there was probable

cause to arrest Mr. Premjee on April 1, 2017—when there was much less evidence available. It is also relevant to establish Defendants' motive and the haste to cause Mr. Premjee's continued arrest even in the face of lack of articulable facts to support his arrest.

Moreover, if accompanied by an appropriate limiting instruction, the 9th Cir. is clear that such evidence may be admissible for another purpose. *Borunda v. Richmond*, 885 F.2d 1384, 1399-89 (9th Cir. 1989) (admissible as proof of damages in the form of attorney's fees in the criminal case); *Sloman v. Tadlock*, 21 F.3d 1462, 1471 (9th Cir. 1994) (admissible to rebut contention of vindictive motive for bringing civil action); *Jimenez v. Sambrano* 2010 WL 55303 *1-*2 (granting Plaintiff's motion in limine to allow statement that he was not convicted of any crime arising from the incident – "because there is no reference to 'acquittal,' the testimony will not present a danger of unfair prejudice to Defendant" and further ruling that "if at trial Plaintiff discovers a more specific purpose for which he needs to introduce evidence of his 'acquittal,' he may make a motion out of the jury's presence to address the issue."). Plaintiff should be able to introduce evidence of the dismissal of criminal charges at the preliminary hearing as part of his evidence that Defendants did not have probable cause to arrest him on April 1. The admissibility of evidence for a limited purpose is governed by Fed.R.Evid. 105. Rule 105 provides in relevant part: "When evidence which is admissible ... for one purpose but not admissible ... for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly.

Finally, if the jury is not informed about the dismissal at the preliminary hearing, it will lead them to speculate as to what happened during the criminal proceedings and that would be unfairly prejudicial to Mr. Premjee.

## IV. CONCLUSION

For the reasons above, the Court is respectfully requested to deny Defendant's Motion *in Limine* No. 1 to exclude mention that Mr. Premjee was not held to answer after the preliminary hearing.

Dated: July 6, 2020

**LAW OFFICES OF VICKI I. SARMIENTO**
**LAW OFFICES OF DALE K. GALIPO**

By: *\/s/ Vicki I. Sarmiento*
VICKI I. SARMIENTO
Attorneys for Plaintiff