# Exhibit "1"

Atkinson-Baker, Inc.
www.depo.com

1             SUPERIOR COURT OF CALIFORNIA

2             FOR THE COUNTY OF LOS ANGELES

3

4   ARMAAN PRENJEE,             )
                                 )
5              Plaintiff, )
                                 )
6      vs.                     ) Case No. 18CV04998
                                 )
7   CITY OF LOS ANGELES,         )
                                 )
8              Defendant.)
     _____)

9

10

11

12

13                 DEPOSITION OF

14                 OSCAR GAMINO

15             GLENDALE, CALIFORNIA

16               APRIL 17, 2019

17   ATKINSON-BAKER, INC.
    (800) 288-3376
18   WWW.DEPO.COM

19

20

21

22

23

24   REPORTED BY: WHITNEY SAIZ-HARDWICK, CSR NO. 13747

25   FILE NO: AD037C0

**CERTIFIED COPY**

1  wrote a summary of what she told me.
2     Q    Okay.  Now, did any witness that she interviewed,
3  and I guess this would relate to the roommates in the
4  apartment, did any of them tell you that they saw Arshia
5  appear unconscious while they observed them having sex?
6     A    No.  Because that -- initially they could not tell
7  who was underneath the male that they saw.
8     Q    Okay.  But you would agree that nobody said words to
9  the effect that they saw Arshia unconscious and during the
10 time she was laying there unconscious, Mr. Prenjee was on top                     13:41:02
11 of her having sex?  Would you agree with that?
12    A    The only disagreement, I guess, I would have is --
13 is -- is what Madison said, you know.  About her initial
14 statement to the police about the legs being wrapped around
15 the back and what she told me about the legs being flat.
16 When she told me that, as we talked earlier, I mean, I think
17 as I said earlier, when someone's legs are wrapped and if
18 we're talking about this situation, in my mind be talking
19 about Arshia being in control of her body versus her legs
20 being flat and not in control of her body, so there's a                          13:41:49
21 difference.
22    Q    I guess what I'm wondering -- I get that
23 distinction.
24         I guess what I'm wondering, if any of the witnesses
25 said words to the effect, hey, I say her laying there, she is

1  completely unconscious and he's having sex with her?
2     A   No.
3     MR. GALIPO: What was the next one in order?
4     THE REPORTER: 15.
5     MR. GALIPO: 15.
6       (Plaintiff's Exhibit 15 was marked for
7       identification.)
8  BY MR. GALIPO:
9     Q   So we had talked about a search warrant, and this --
10 I think you mentioned there was maybe one in August and then
11 a follow-up one. Do you recall that?
12    A   Yes.
13    Q   So take a look at this one. This is the August
14 search warrant. I guess this would be the one to get the
15 Title 9 documents?
16    A   They were both to -- for the Title 9 documents.
17    Q   Okay. And does someone generally -- usually these
18 search warrants are signed off by judges. Is that your
19 experience?
20    A   Yes.
21    Q   And then you have to prepare paperwork for the judge
22 to review and sign?
23    A   Yeah, attachments or addendas. Yes.
24    Q   And they're generally prepared under penalty of
25 perjury?

13:42:39 (line 10)
13:43:10 (line 20)

Atkinson-Baker, Inc.
www.depo.com

```
 1      A    Yes.
 2      Q    Do you know who prepared this search warrant?  Can
 3 you tell from looking at it?
 4      A    This is a search warrant that was prepared by my
 5 partner, Detective Carla Zuniga.
 6      Q    Okay.  Do you -- did you review it, if you remember,
 7 before it was signed off and went out?
 8      A    For the most part, yes.
 9      Q    Okay.  And generally you would review it for
10 accuracy?                                                           13:43:45
11      A    Yes.
12      Q    And see if there's anything you catch?
13      A    Yes.
14      Q    So I want to direct your attention -- and obviously
15 in a search warrant, I mean you're giving the information to
16 the judge so the judge could decide based on that information
17 whether it's appropriate to sign off essentially?
18      A    Yes.
19      Q    And it's important, obviously, for the information
20 to be accurate?                                                     13:44:05
21      A    Yes.
22      Q    Okay.  So I had a question for you.  And this would
23 be Page 4 of 9, there's some -- there's some line numbers
24 starting on line 16, it's kind of -- it's usually described
25 chronologically; right?
```

Atkinson-Baker, Inc.
www.depo.com

1      In other words, she recalled on Friday night and
2  then she consumed alcohol, that was the last thing she
3  remembered.  But I want to go to lines -- starting on line
4  22.  Do you see during their investigation, do you see that
5  sentence on line 22 after Attachment 1?
6      A    Yes.
7      Q    So it says, "During their investigation, they
8  interviewed the victim's roommates"; is that correct?
9      A    Yes.
10     Q    And then it says, "In summary, they saw the victim     13:45:11
11  unconscious on the mattress in the common room of the dorm."
12  Do you see that sentence?
13     A    Yes.
14     Q    Next sentence, "A male was on top of her having
15  sexual intercourse with her."
16     A    Yes.
17     Q    Do you see that sentence?
18     A    Yes.
19     Q    Would you agree technically that's inaccurate in
20  terms of the witnesses never said they saw the victim         13:45:29
21  unconscious on a mattress with a male on top of her having
22  sexual intercourse with her?
23     A    Yes.  That would look like that, yes.
24     Q    So you would agree that part of it is inaccurate;
25  would that be fair?

Atkinson-Baker, Inc.
www.depo.com

1  MS. SARMIENTO: Objection. Calls for legal conclusion.
2      You can -- you can answer.
3  THE WITNESS: I'm sorry?
4  MS. SARMIENTO: It calls for a legal conclusion. You can
5  answer.
6  THE WITNESS: Just looking at those two lines, it would
7  appear it's inaccurate.
8  BY MR. GALIPO:
9      Q    Okay. And if you know, did the judge eventually
10 sign off on this search warrant?                                    13:46:05
11     A    Yes.
12     Q    Okay. And you eventually got documents from Title
13 9?
14     A    Yes.
15 MR. GALIPO: Okay. Is this a good time for a short
16 break? Because I think we're getting close to finishing and
17 I just want to confer with counsel?
18 MS. SARMIENTO: Sure.
19 THE VIDEOGRAPHER: We're off the record at 1:45 p.m.
20     (A brief recess was taken.)                                    13:59:06
21 THE VIDEOGRAPHER: We are back on the record at 1:58 p.m.
22 BY MR. GALIPO:
23     Q    Okay. I had a question about one of the reports and
24 I'll see if I can find. Trying to find -- oh, here it is.
25 Are you looking for something else or...

Atkinson-Baker, Inc.
www.depo.com

```
 1                    REPORTER'S CERTIFICATE
 2
 3
 4        I, WHITNEY SAIZ-HARDWICK, CSR No. 13747, Certified
 5   Shorthand Reporter, certify:
 6        That the foregoing proceedings were taken before
 7   me at the time and place therein set forth, at which
 8   time the witness was put under oath by me;
 9        That the testimony of the witness, the questions
10   propounded, and all objections and statements made at
11   the time of the examination were recorded
12   stenographically by me and were thereafter transcribed;
13        That the foregoing is a true and correct
14   transcript of my shorthand notes so taken.
15        I further certify that I am not a relative or
16   employee of any attorney of the parties, nor financially
17   interested in the action.
18        I declare under penalty of perjury under the laws
19   of California that the foregoing is true and correct.
20        Dated Friday April 19, 2019.
21
22        _____
23             WHITNEY SAIZ-HARDWICK, CSR No. 13747
24
25
```